# EXHIBIT A



U.S. Department of Justice
Bureau of Alcohol, Tobacco,
Firearms and Explosives
*Office of Enforcement Programs and Services*
Washington, DC 20226
www.atf.gov

December 27, 2022

## OPEN LETTER TO ALL FEDERAL FIREARMS LICENSEES

### Impact of Final Rule 2021-05F on Partially Complete Polymer80, Lone Wolf, and Similar Semiautomatic Pistol Frames

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) is issuing this open letter to assist the firearms industry and the public in understanding whether a "partially complete, disassembled, or nonfunctional" frame of a Polymer80, Lone Wolf, or similar semiautomatic, striker-fired pistol (sometimes generally referred to as "Glock-type" pistols) has reached a stage of manufacture such that it "may readily be completed, assembled, restored, or otherwise converted" to a functional frame, and is therefore classified as a "frame" or "firearm" in accordance with the final rule titled *Definition of 'Frame or Receiver' and Identification of Firearms* (Final Rule 2021R-05F), which became effective August 24, 2022.  In particular, the following addresses partially complete, disassembled, or nonfunctional semiautomatic striker-fired pistol frames or parts kits manufactured, sold, or distributed by Polymer80 (known as 'Poly80' or 'P80' frames or blanks), Lone Wolf (known as 'Freedom Wolf 80%' frames), and others, with the characteristics described below.

**Summary**

Applying the regulatory text of Final Rule 2021-05F, partially complete Polymer80, Lone Wolf, and similar striker-fired semiautomatic pistol frames, including, but not limited to, those sold within parts kits, have reached a stage of manufacture where they *"may readily be completed, assembled, restored, or otherwise converted"* to a functional frame.  This definition of "readily" applies to each and every classification of a partially complete frame or receiver under this Rule, whether sold alone or as part of a kit.  Therefore, *even without* any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials, these partially complete pistol frames are "**frames**" and also "**firearms**" as defined in the GCA and its implementing regulations, 18 U.S.C. § 921(a)(3)(B) and 27 CFR 478.12(a)(1), (c).

**Background**

The Gun Control Act (GCA) defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;* **(B) the frame or receiver of any such weapon**; *(C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique*

*firearm."* (Emphasis added.) 18 U.S.C. § 921(a)(3). The GCA implementing regulations define the terms "frame" and "receiver" by describing a single housing or structural component for one specific fire control component of a given weapon—for example, a single housing is specified for particular weapons such as a "handgun" and a "rifle." 27 CFR 478.12(a).

The regulation defines the term "**frame**" in 27 CFR 478.12(a)(1), as *"the part of a handgun, or variants thereof, that provides housing or a structure for the component (i.e., sear or equivalent) designed to hold back the hammer, striker, bolt, or similar primary energized component prior to initiation of the firing sequence, even if pins or other attachments are required to connect such component (i.e., sear or equivalent) to the housing or structure*."

Further, 27 CFR 478.12(c) explains when a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, is regulated as a "**frame**" or "**receiver**":

> *The terms 'frame' and 'receiver' shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit.*

Section 478.11 defines "**readily**" as:

> *A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
>
> *(a) Time, i.e., how long it takes to finish the process;*
> *(b) Ease, i.e., how difficult it is to do so;*
> *(c) Expertise, i.e., what knowledge and skills are required;*
> *(d) Equipment, i.e., what tools are required;*
> *(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
> *(f) Expense, i.e., how much it costs;*
> *(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*

> *(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process or cause it to malfunction.*

The above list of factors is a non-exhaustive list but represents factors that have been identified by federal courts as being relevant to a "**readily**" analysis with respect to firearms. For each and every assessment of whether any partially complete frame (in the case of a handgun) or receiver (in the case of a long gun) – whether assessed individually, or in conjunction with other items – is a "firearm" under the GCA, parties must consider the above definition, including all factors that are relevant to that assessment. This is true for all frames and receivers.

**Analysis**

There are many partially complete, disassembled, or nonfunctional semiautomatic pistol "frames" being marketed as so-called "partially complete" or "80%" frames.  The Federal firearms statutes and regulations, however, do not employ terms such as "80%," "80% finished," or "80% complete."  These are merely terms used by some to market these items; they are not based upon application of the term "**readily**" in the GCA or Final Rule 2021-05F.  As used in the GCA and the Final Rule, the term "readily" does not involve evaluation of a percentage of completion for an item that, when completed, will function as a frame or receiver.  Rather, the analysis examines how efficiently, quickly, and easily a clearly identifiable component part of a weapon can be completed, assembled, restored, or otherwise converted to house or provide a structure for the applicable fire control component.  Such analysis may include consideration of any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are, directly or indirectly, sold, distributed, possessed, or marketed with the component part or kit. As outlined in the above definition, the analysis must consider all factors that are relevant to the assessment.

On the above mentioned "partially complete" pistol frames and products manufactured by Polymer80, Lone Wolf, and similar "partially complete" frames used to assemble semiautomatic, striker-fired pistols, the critical areas of the "**frame**" are the front and rear fire control cavities.  The front and rear cavities are critical because these areas provide housing for the sear.  *See* 27 CFR 478.12(a)(1), (a)(4)(iii).  As further explained and illustrated below, removing or indexing any material in these critical areas, or completing or indexing any of the pin holes necessary to install the sear, are therefore crucial steps in producing a functional frame.



*Figure 1*

**In a pistol based on a Glock design, the trigger is housed in the front fire control cavity, and the sear, which is connected by the trigger bar, is located in the rear cavity.**



*Figure 2*

**For reference, in a pistol based on a Glock design, the trigger bar assembly contains the sear.  The trigger bar assembly operates as a single unit.**



*Figure 3*

**The trigger bar assembly (side view and top view) is a single unit.  The frame cannot house or provide a structure for the sear without both the front and rear cavities.**

In addition, many front and rear cavities of pistol frames using this internal design incorporate slide rails that have pin holes designed to secure the trigger mechanism and sear in precise locations. Specifically, in the Polymer80 design, the front cavity also provides housing for a front slide rail module (known as the "Locking Block Rail System" or "LBRS"), and the rear cavity provides housing for a rear slide rail module (known as the "Rear Rail Module" or "RRM").  Under the Final Rule, these slide rail components are "attachments … required to connect" the sear to the frame.  *See* 27 CFR 478.12(a)(1).



*Figure 4*

**The above picture, taken from Polymer80 instructional materials, shows that the trigger bar assembly is attached to the "Rear Rail Module," which is attached to the frame.**



*Figure 5*

**Top view of "Locking Block Rail System" and "Rear Rail Module" with trigger and trigger mechanism installed.**

The above mentioned "partially complete" pistol frame products marketed by Polymer80, Lone Wolf, and substantially similar "partially complete" frames used to assemble semiautomatic striker-fired pistols, are also manufactured from a polymer material and incorporate temporary rails or blocking tabs that are easily removable by a person with novice skill, using common tools, such as a Dremel-type rotary tool, within minutes—an amount of time and a set of circumstances that are far less than required to fall within the meaning of the term "readily" in the Final Rule.  Once this material is removed, the partially complete frames are immediately capable of accepting both the slide rail attachments and fire control components, including the sear.



*Figure 6*

**FIREARM - Poly80 with Temporary Rails**



*Figure 7*

**FIREARM - Poly80 with Temporary Rails and Barrel Blocking Tab**



*Figure 8*

**FIREARM - Poly80 with Temporary Rails and Barrel Blocking Tab**

In addition, similar partially complete frame designs, such as those marketed by Lone Wolf, do not require removal of temporary rails but make it easy to attach the slide rails with connection points for the trigger mechanism and sear by incorporating fully formed front and rear fire control cavities into which the slide rails may be inserted. These slide rail attachments are

commercially available online and may be glued-on within minutes—an amount of time and a set of circumstances that are far less than required to fall within the meaning of the term "readily" in the Final Rule—with no fitting and no specialized knowledge or expertise. The ease of obtaining and attaching such items is also pertinent as part of the analysis.



*Figure 9*

**FIREARM** - Lone Wolf "Freedom Wolf 80%" with Cavities for Slide Rail Attachments.



*Figure 10*



*Figure 11*

-9-

**FIREARM - Fully Formed Front and Rear Cavities to Attach Slide Rail Inserts**



*Figure 12*

**Locking Block Cavity**



**Trigger Mechanism Cavity**

Based on the above, partially complete Polymer80, Lone Wolf, and similar pistol frames with any kind of indexing or material removed from the front or rear fire control cavities for installation of the trigger mechanism and sear, or slide rail attachments to connect the trigger mechanism and sear to the frame, have reached a stage of manufacture where they *"may readily be completed, assembled, restored, or otherwise converted"* to a functional frame.  As examined, they are classified as a "**frame**" and also a "**firearm**," as defined in the GCA, 18 U.S.C. § 921(a)(3)(B), and implementing regulations, 27 CFR 478.12(a)(1), (c).  They are classified as firearms even if they are not sold, distributed, marketed, or possessed with any associated templates, jigs, molds, equipment, tools, instructions, or guides.  While the analysis allows for the consideration of how a partially complete frame is, directly or indirectly, sold, distributed, marketed, or possessed with any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials, for these partially complete frames such analysis was not necessary because they are, by themselves, "frames" and "firearms" as defined in the GCA.

This information is provided to assist the firearms industry and general public in understanding whether the above mentioned "partially complete" pistol frame products manufactured by Polymer80, Lone Wolf, and substantially similar "partially complete" frames

used to assemble semiautomatic striker-fired pistols have reached the stage of manufacture where they are classified as a "**frame**" or "**firearm**."  If persons remain unclear with respect to a specific model or configuration, they can voluntarily submit a request, under penalty of perjury, with a sample to ATF in accordance with 27 CFR 478.92(c) (GCA) or 479.102(c) (NFA).  ATF cannot render a formal determination without a formal request and physically examining a submitted sample.

If you have any questions, please contact the Firearms & Ammunition Technology Division at fire_tech@atf.gov or (304) 616-4300.

MATTHEW VARISCO
Digitally signed by MATTHEW VARISCO
Date: 2022.12.27 10:45:27 -05'00'

KRISTEN DETINEO
Digitally signed by KRISTEN DETINEO
Date: 2022.12.27 11:53:54 -06'00'

       Assistant Director                           Assistant Director
Enforcement Programs and Services           Field Operations