**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| POLYMER80, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>    Defendants. | Case No. 4:23-cv-00029-O |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT FOR IMPROPER VENUE OR,
IN THE ALTERNATIVE, TO TRANSFER VENUE**

## TABLE OF CONTENTS

INTRODUCTION.........................................................................................................................1

BACKGROUND.........................................................................................................................2

LEGAL STANDARDS...............................................................................................................3

ARGUMENT..............................................................................................................................4

I.      The Court Should Dismiss This Lawsuit for Improper Venue........................................4

II.     In the Alternative, the Court Should Transfer the Case to the District of Nevada
        Under 28 U.S.C. § 1404(a).............................................................................................8

        A.      This Case Could Have Been Brought in District of Nevada...............................9

        B.      The Private Interest Factors Favor the District of Nevada.................................9

        C.      The Public Interest Factors Favor the District of Nevada................................11

        D.      Good Cause Exists to Transfer this Case to the District of Nevada..............13

CONCLUSION.........................................................................................................................15

## TABLE OF AUTHORITIES

## <u>Cases</u>

*Abraham v. Alpha Chi Omega,*
  708 F.3d 614 (5th Cir. 2013) ................................................................................................9

*Bassili v. Chu,*
  242 F. Supp. 2d 223 (W.D.N.Y. 2002) ...............................................................................7

*Dep't of Homeland Sec. v. New York,*
  140 S. Ct. 599 (2020) .......................................................................................................14

*Div. 80, LLC v. Garland,*
  No. 3:22-CV-148, 2022 WL 3648454 (S.D. Tex. Aug. 23, 2022) .....................................14

*Experian Info. Sols., Inc. v. F.T.C.,*
  No. Civ. 3:00-cv-1631-H, 2001 WL 257834 (N.D. Tex. Mar. 8, 2001) ...........................7

*Holz v. United States,*
  No. 3:08-cv-1568-P, 2009 WL 10704725 (N.D. Tex. Sept. 28, 2009) ..............................3

*In re Volkswagen AG,*
  371 F.3d 201 (5th Cir. 2004) ............................................................................................10

*In re Volkswagen of Am., Inc.,*
  545 F.3d 304 (5th Cir. 2008) .....................................................................................*passim*

*Laufer v. Mann Hospitality, LLC.,*
  996 F.3d 269 (5th Cir. 2021) ..............................................................................................9

*McClintock v. Sch. Bd. E. Feliciana Par.,*
  299 F. App'x 363 (5th Cir. 2008) ....................................................................................5, 7

*McCuin v. Texas Power & Light Co.,*
  714 F.2d 1255 (5th Cir. 1983) ..........................................................................................14

*Morehouse Enters. v. ATF,*
  No. 3:22-CV-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022), *appeal docketed,*
  *Arizona v. ATF,* No. 22-2812 (8th Cir.) ............................................................................14

*Nuttall v. Juarez,*
  984 F. Supp. 2d 637 (N.D. Tex. 2013) ............................................................................3, 4

*Opulent Life Church v. City of Holly Springs, Miss.,*
  697 F.3d 279 (5th Cir. 2012) ..............................................................................................9

*Seariver Mar. Fin. Holdings, Inc. v. Pena,*
  952 F. Supp. 455 (S.D. Tex. 1996) ............................................................ 5, 6

*Sigoloff v. Austin,*
  No. 4:22-CV-00923-P, 2023 WL 2142982 (N.D. Tex. Feb. 21, 2023) ........................ 5, 6, 12

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ...................................................................................... 9

*VanDerStok v. Garland,*
  No. 4:22-cv-691-O, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022) .......................... 14

*Veba–Chemie A.G. v. M/V Getafix,*
  711 F.2d 1243 (5th Cir. 1983) ...................................................................... 8

*Woodke v. Dahm,*
  70 F.3d 983 (8th Cir. 1995) .......................................................................... 6

## Statutes

18 U.S.C. § 921 ................................................................................................ 2

28 U.S.C. § 1391 ................................................................................... *passim*

28 U.S.C. § 1404 ................................................................................... *passim*

28 U.S.C. § 1406(a) ...................................................................................... 4, 8

## Regulations

Final Rule, Definition of "Frame or Receiver" and Identification of Firearms,
  87 Fed. Reg. 24,652 (Apr. 26, 2022) ............................................................ 2, 6

## Rules

Fed. R. Civ. P. 45(c)(1) ................................................................................ 10

## Other Authorities

Google Maps, Directions from 134 Lakes Blvd., Dayton, NV 89403, to 400 S Virginia St., Reno, NV 89501,
  https://www.google.com/maps/dir/134+Lakes+Blvd,+Dayton,+NV+89403/400+South+Virginia+Street,+Reno,+NV/@39.3491351,-119.9708704,10z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x809907750a53e70d:0xeb90377f91f273c6!2m2!1d-119.5554462!2d39.2362647!1m5!1m1!1s0x809940b641d717d3:0xbc6b4af4dc76d174!2m2!1d-119.8103159!2d39.5215417!3e0 ................................................................................ 10

Google Maps, Directions from 134 Lakes Blvd., Dayton, NV, 89403, to 501 W. 10th St., Fort
    Worth, TX, 76102,
    https://www.google.com/maps/dir/134+Lakes+Blvd,+Dayton,+NV+89403/United+State+Co
    urt+House,+501+W+10th+St,+Fort+Worth,+TX+76102/@34.8797147,-
    117.4723346,5z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x809907750a53e70d:0xeb90377f91f273
    c6!2m2!1d-
    119.5554462!2d39.2362647!1m5!1m1!1s0x864e716a50029aed:0xf54836742efeed7f!2m2!1d-
    97.3333436!2d32.7496312!3e0.; ................................................................................................................ 10-11

U.S. District Court for the Northern District of Texas, Northern District Judges,
    https://www.txnd.uscourts.gov/northern-district-judges ................................................................11, 12

U.S. District Court for the District of Nevada, Judges,
    https://www.nvd.uscourts.gov/court-information/judges/ ..............................................................11, 12

United States Courts, Federal Judicial Caseload Statistics 2022 Tables, Table C,
    https://www.uscourts.gov/file/44146/download ...............................................................................11

United States Courts, Federal Judicial Caseload Statistics 2022 Tables, Table D,
    https://www.uscourts.gov/file/44160/download ...............................................................................12

## INTRODUCTION

The Northern District of Texas is an improper venue for this lawsuit filed by a Nevada company against federal agencies and officials based in Washington, D.C., concerning a challenge to the legality of a federal regulation and the application of that regulation to the company's products. Plaintiff relies primarily on a provision allowing suit against the federal government in a district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e)(1)(B). But the only alleged connection to this district is that Plaintiff sells its products throughout the country, including in this district, and Plaintiff attends a biannual trade show in this district. Those limited contacts do not give rise to Plaintiff's claims and, in any event, do not meet the threshold of substantiality. Accepting Plaintiff's venue theory would create the result that a nationwide seller of products could choose virtually any judicial district in the country to bring a challenge to federal regulations. That is not what the venue statute provides or what Congress intended. The Court should dismiss Plaintiff's lawsuit for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3).

Alternatively, even if the Court were to determine that venue is proper, the Court should transfer the case to the U.S. District Court for the District of Nevada under 28 U.S.C. § 1404. The District of Nevada, where Plaintiff resides, is a proper venue where Plaintiff could have brought this case. Nearly all of the private interest and public interest factors that guide courts' decisions on transfer motions favor the District of Nevada, and none favors this district. Nevada has a localized interest in deciding controversies about the application of a federal regulatory regime to a Nevada-based company, and most or all evidence about Plaintiff's business is presumably located in Nevada. The only apparent reason for Plaintiff to have filed here is to appear before a judge who has issued favorable preliminary rulings to plaintiffs in another case challenging the regulation at issue here.

1

"[T]he convenience of parties and witnesses" and "the interest of justice," 28 U.S.C. § 1404(a), favor transfer to the District of Nevada.

## BACKGROUND

Plaintiff Polymer80, Inc. ("Plaintiff") is a Nevada corporation with its principal place of business in Dayton, Nevada. Compl. ¶ 18, ECF No. 1; Compl. Ex. E, Declaration of Loran L. Kelley Jr. ¶ 4, ECF No. 1-6 ("Kelley Decl."). Plaintiff filed this lawsuit against two federal agencies and the officers who lead those agencies in their official capacities: the U.S. Department of Justice ("DOJ"); the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), a bureau within DOJ that administers and enforces federal firearms statutes; Merrick Garland, in his official capacity as Attorney General of the United States; and Steven Dettelbach, in his official capacity as Director of ATF. Compl. ¶¶ 19-22. Both DOJ and ATF are headquartered in Washington, D.C., *id.* ¶¶ 20, 22, which is also where Attorney General Garland and Director Dettelbach perform their official functions.

Plaintiff manufactures and sells, among other things, products that its customers can use to make complete firearms. *Id.* ¶ 2. In this lawsuit, Plaintiff challenges the lawfulness of three actions: (1) a rule promulgated by ATF and DOJ, Final Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (the "Rule"), which, among other things, addresses the meaning of the terms "frame or receiver" and "firearm" in the Gun Control Act, 18 U.S.C. § 921 *et seq.* ("GCA"); (2) an open letter ATF issued to all federal firearms licensees on December 27, 2022, which concluded that certain products (including some sold by Plaintiff) were firearms under the Rule and the GCA, and thus subject to the GCA's regulations of firearms, Compl. Ex. A, ATF, Open Letter to All Federal Firearms Licensees (Dec. 27, 2022), ECF No. 1-2 (the "Open Letter"); and (3) a letter ATF sent to Plaintiff on December 27, 2022, informing Plaintiff that ATF considered certain products sold by Plaintiff to be firearms under the Rule and the GCA, Compl. Ex. D, Letter from Daniel Hoffman to Loran Kelley (Dec. 27, 2022), ECF No. 1-5 (the "Polymer80

Letter"). Plaintiff asserts 17 causes of action, claiming that the Rule, the Open Letter, and the Polymer80 Letter are unlawful for a variety of reasons, including that they exceed ATF's statutory authority, violate various provisions of the Constitution, and were promulgated in violation of the Administrative Procedure Act (APA). *See generally* Compl. ¶¶ 125-235.

The Complaint contains no allegation that any of the Defendants took any action within this district. In support of venue in this district, Plaintiff alleges: "Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(e)(1)(B) and (C). A substantial part of the events giving rise to these claims occurred in this district; a substantial part of the property that is the subject of the action is situated in this district; and Polymer80 has engaged in business transactions in this district. *See* Kelley Decl., at ¶ 6." Compl. ¶ 24; *see also id.* ¶ 18 ("Polymer80 distributes its products throughout the United States, including within this district."); *id.* ¶ 40 ("many of" Plaintiff's customers "reside in this district").

In support of its venue allegations, Plaintiff submits the declaration of its co-founder and CEO, Loran L. Kelley, Jr. He avers that he resides in Nevada, and Plaintiff is a Nevada corporation with its principal place of business in Dayton, Nevada. Kelley Decl. ¶¶ 2, 4. In support of venue in this district, he avers:

> Polymer80 distributes receiver blanks throughout the United States, including within this district. Receiver blanks are popular among Polymer80's customers, many of whom reside in this district. Polymer80 has sold a substantial number of its products in this district, and attends—and sells its products at—the biannual Nation's Best Sports trade show, which occurs in Fort Worth. Polymer80 intends to continue and grow its sales of receiver blanks into the Dallas Forth-Worth [sic] area and into Texas generally.

*Id.* ¶ 6.

## LEGAL STANDARDS

"A party may move to dismiss an action based on improper venue pursuant to Fed. R. Civ. P. 12(b)(3)." *Holz v. United States*, No. 3:08-cv-1568-P, 2009 WL 10704725, at *2 (N.D. Tex. Sept. 28, 2009). "Once a defendant has objected to venue, the burden shifts to the plaintiff to establish that venue is proper as to each defendant and each claim." *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 642 (N.D.

Tex. 2013).  Venue for lawsuits against federal officers or agencies is governed by 28 U.S.C. § 1391(e),

which provides that such an action "may, except as otherwise provided by law, be brought in any

judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or

omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the

action is situated, or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C.

§ 1391(e)(1).  "If venue is improper, the Court has broad discretion to dismiss the case or, in the

interest of justice, transfer the case to any district where venue is proper."  *Nuttall*, 984 F. Supp. 2d at

643 (citing 28 U.S.C. § 1406(a)).

Even if venue is proper, "a district court may transfer any civil action to any other district or

division where it might have been brought" "[f]or the convenience of parties and witnesses, in the

interest of justice."  28 U.S.C. § 1404(a).  "The preliminary question under § 1404(a) is whether a civil

action 'might have been brought' in the destination venue."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304,

312 (5th Cir. 2008).  If so, then the Court evaluates the relative convenience of the transferor venue

and transferee venue by considering the following private and public interest factors:

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the
> availability of compulsory process to secure the attendance of witnesses; (3) the cost of
> attendance for willing witnesses; and (4) all other practical problems that make trial of a case
> easy, expeditious and inexpensive.  The public interest factors are: (1) the administrative
> difficulties flowing from court congestion; (2) the local interest in having localized interests
> decided at home; (3) the familiarity of the forum with the law that will govern the case; and
> (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign
> law.

*Id.* at 315 (citations, quotations, and alterations omitted).

## ARGUMENT

### I.   The Court Should Dismiss This Lawsuit for Improper Venue

Venue is improper in this district, which is not the residence of any party and which has, at

most, a tangential factual connection to Plaintiff's claims.  Plaintiff does not claim that venue is

appropriate under 28 U.S.C. § 1391(e)(1)(A), *see* Compl. ¶ 24, and for good reason.  That provision

makes venue appropriate in a district in which "a defendant in the action resides," 28 U.S.C. § 1391(e)(1)(A), but no Defendant resides in this district, and Plaintiff does not claim otherwise.

With no explanation, Plaintiff claims venue in this district under 28 U.S.C. § 1391(e)(1)(C), *see* Compl. ¶ 24, but there is no basis for venue under this provision. This provision provides for venue in a district where "the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1)(C). For venue purposes, a legal entity plaintiff resides "only in the judicial district in which it maintains its principal place of business." *Id.* § 1391(c)(2). Therefore, Plaintiff resides only in the District of Nevada, where it maintains its principal place of business. *See* Compl. ¶ 18; Kelley Decl. ¶ 4.

That leaves only § 1391(e)(1)(B), which authorizes venue in a district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e)(1)(B). Plaintiff does not satisfy either prong of that test.

First, Plaintiff does not allege that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. "Although the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts still must be substantial." *McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363, 365 (5th Cir. 2008). "Events that have only a tangential connection with the dispute at bar are not sufficient to lay venue." *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 460 (S.D. Tex. 1996).

Here, the only allegations that Plaintiff makes concerning this district are that it makes an unspecified number of sales in this district and attends a biannual trade show in this district. *See* Compl. ¶¶ 18, 24; Kelley Decl. ¶ 6. But Plaintiff does not show that a substantial part of the events giving rise to Plaintiff's claims occurred in this district. "Where the claim arose is ascertained by events that have operative significance in the case." *Sigoloff v. Austin*, No. 4:22-CV-00923-P, 2023 WL

2142982, at *2 (N.D. Tex. Feb. 21, 2023). Furthermore, "by referring to 'events or omissions giving rise to the claim,' it is likely that 'Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'" *Seariver*, 952 F. Supp. at 460 (quoting *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir. 1995)). Plaintiff does not allege that Defendants have taken any actions in this district, let alone any actions that gave rise to Plaintiff's claims. Nor does Plaintiff explain how Plaintiff's sales in this district or attendance at a trade show "have operative significance in the case." *Sigoloff*, 2023 WL 2142982, at *2.

To the contrary, the Complaint makes clear that the events that gave rise to Plaintiff's claims occurred outside this District. Because Plaintiff challenges the lawfulness of the Rule, the Open Letter, and the Polymer80 Letter, the issuance of that Rule and those letters gave rise to Plaintiff's claims. *See* Compl. ¶¶ 60-100 (allegations concerning promulgation of the Rule); *id.* ¶¶ 101-116 (allegations concerning issuance of the Open Letter and Polymer80 Letter); *see also id.* ¶¶ 125-133, 142-147, 154-156, 160-165, 172-183, 200-235 (setting forth legal claims challenging the Rule); *id.* ¶¶ 134-141, 148-153, 157-159, 166-171, 184-191, 211-218, 228-235 (setting forth legal claims challenging the Open Letter); *id.* ¶¶ 192-199, 211-218, 228-235 (setting forth legal claims challenging the Polymer80 Letter). ATF and DOJ promulgated the Rule from Washington, D.C. *See* 87 Fed. Reg. at 24,652 (listing ATF's Washington, D.C. headquarters as contact address). ATF also issued the Open Letter from Washington, D.C. *See* Compl. Ex. A, at 1 (letter addressed from ATF's Office of Enforcement Programs and Services in Washington, D.C.). The Polymer80 Letter was addressed from ATF's Firearms Technology Industry Services Branch in Martinsburg, West Virginia, to Polymer80 in Dayton, Nevada. *See* Compl. Ex. D, at 1. None of these events occurred in or had any connection to this district. It is telling that in the entire 234-paragraph Complaint, only three paragraphs mention any events occurring in this district, and only then to refer generally to sales of products that occur throughout the country. *See* Compl. ¶¶ 18, 24, 40.

6

Where, as here, the events giving rise to a claim occurred elsewhere, the suggestion that a plaintiff may feel some effects of those events in this district is insufficient to support venue. *See McClintock*, 299 F. App'x at 365 ("Venue also cannot lie simply because a plaintiff continues to experience the psychological effects of an injury in a particular place."). Furthermore, the event giving rise to a legal claim challenging an agency rule is promulgation of the rule. *See Experian Info. Sols., Inc. v. FTC*, No. Civ. 3:00-cv-1631-H, 2001 WL 257834, at *3 (N.D. Tex. Mar. 8, 2001) (rejecting assertion that events giving rise to a challenge to an FTC rule occurred in this district where the FTC took enforcement actions in this district). Therefore, Plaintiff's supposition that Defendants' actions may affect some sales in this district, even if credited, would not establish venue.

Plaintiff also cannot establish that "a substantial part of property that is the subject of the action is situated" in this district. 28 U.S.C. § 1391(e)(1)(B). Indeed, the Complaint contains no allegations about any property in this district, let alone that property situated in this district is "a substantial part of the property that is the subject of the action." *Id.* To the extent Plaintiff intends to argue that venue is proper because its products are located throughout the country, including in this district, that is "too tenuous a connection" to give rise to venue here. *Bassili v. Chu*, 242 F. Supp. 2d 223, 231 (W.D.N.Y. 2002) (rejecting argument that venue for a Lanham Act product disparagement claim was proper in the Western District of New York because "the plaintiffs' products might be found in a warehousing or distribution facility located within the district").

If the Court were to accept Plaintiff's theory of venue based on making some sales and attending an occasional trade show in this district, then any nationwide seller of products could select virtually any district in the country for a lawsuit against the federal government challenging a regulation that arguably affected the company's business. The text of § 1391, which contains a "substantial[ity]"

threshold for lying venue in a district based on events or property in that district, does not countenance such a result.  The Court should dismiss this lawsuit for improper venue.[1]

## II.   In the Alternative, the Court Should Transfer the Case to the District of Nevada Under 28 U.S.C. § 1404(a)

In the alternative, even if the Court were to determine that this district is a proper venue, it should exercise its discretion to transfer the case to the District of Nevada under 28 U.S.C. § 1404(a) because that district is a far more convenient venue than this district, and because the interests of justice favor transfer.  "[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege" by authorizing courts to "prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).  Section 1404(a) does not place a "heavy burden" on a defendant seeking a transfer, but "requires only that the transfer be '[f]or the convenience of the parties, in the interest of justice.'"  *Id.* (quoting *Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1247 (5th Cir. 1983)).  "When the movant demonstrates that the transferee venue is clearly more convenient, . . . it has shown good cause and the district court should therefore grant the transfer."  *Id.* at 315.  For the reasons explained below, the District of Nevada is clearly more convenient than this district.  Each of the private and public interest factors that guide the Court's discretion either favors the District of Nevada or is neutral.

---

[1] If the Court deems it in the interest of justice to transfer rather than dismiss this case, *see* 28 U.S.C. § 1406(a), Defendants respectfully submit that the District of Nevada would be an appropriate transferee venue, for the reasons explained *infra*, Part II.  The U.S. District Court for the District of Columbia would also be a proper venue, as that is where Defendants reside and where a substantial part of the events giving rise to Plaintiff's claims occurred.

## A.     This Case Could Have Been Brought in District of Nevada

Before considering a potential transferee venue, a court must determine that the case "might have been brought" there.  28 U.S.C. § 1404(a).  Here, that requirement is easily satisfied.  A lawsuit against the federal government may be brought in a district in which "the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1)(C).  Here, no real property is involved, and plaintiff resides in the District of Nevada, home of Plaintiff's principal place of business.  *See id.* § 1391(c)(2); Compl. ¶ 18; Kelley Decl. ¶ 4.

## B.     The Private Interest Factors Favor the District of Nevada

Each of the private interest factors favors the District of Nevada over this district or is neutral between those two districts.

Consideration of "the relative ease of access to sources of proof," *Volkswagen*, 545 F.3d at 315, favors the District of Nevada over this district.  It is not likely that any relevant evidence would be present in this district.  By contrast, any evidence concerning Plaintiff's business and the effect of Defendants' actions on Plaintiff's business would likely be located predominantly in Nevada, where Plaintiff is headquartered.  To establish standing, Plaintiff will need to show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Laufer v. Mann Hospitality, LLC*, 996 F.3d 269, 272 (5th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Although parties often do not submit evidence in APA cases, here Plaintiff has indicated it intends to seek preliminary and permanent injunctive relief, *see* Compl., Prayer, ¶¶ d-e (listing injunctive relief in the prayer for relief), which places on Plaintiff an evidentiary burden to demonstrate irreparable harm caused by Defendants' actions.  *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626-27 (5th Cir. 2013); *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012).  Evidence of harm to Plaintiff's business is likely to be located in Nevada.  Tellingly, the evidence that Plaintiff submitted in

support of its Complaint include a letter Plaintiff received in Nevada and a declaration of Plaintiff's CEO, who resides in Nevada. *See* Compl. Exs. D, E.

"[T]he availability of compulsory process to secure the attendance of witnesses," *Volkswagen*, 545 F.3d at 315, also favors the District of Nevada over this district. The only person who has submitted a factual attestation in this case so far is Kelley, who resides in Nevada and would be subject to compulsory process in the District of Nevada. *See* Fed. R. Civ. P. 45(c)(1). Moreover, if any other current or former employees of Plaintiff become witnesses on issues such as standing or irreparable harm, they are much more likely to be subject to the subpoena power of the District of Nevada (where Plaintiff is headquartered) than this district. *See id.* By contrast, the Complaint does not suggest that any witness would be subject to compulsory process in this district but not in the District of Nevada.

Likewise, "the cost of attendance for willing witnesses," *Volkswagen*, 545 F.3d at 315, favors the District of Nevada over this district. To the extent necessary, it would be far more convenient for Plaintiff's officers or employees to testify in the District of Nevada than in this district. "[I]t is an obvious conclusion that it is more convenient for witnesses to testify at home and that [a]dditional distance" adds to the cost and inconvenience of testifying. *Id.* at 317 (quoting *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004)). Plaintiff's headquarters in Dayton, Nevada is approximately an hour drive from the District of Nevada's Reno courthouse.[2] It is a drive of approximately 24 hours and 1,600 miles (or a flight of more than three hours) from this district's Fort Worth courthouse.[3]

---

[2] Google Maps, Directions from 134 Lakes Blvd., Dayton, NV 89403, to 400 S Virginia St., Reno, NV 89501,
https://www.google.com/maps/dir/134+Lakes+Blvd,+Dayton,+NV+89403/400+South+Virginia+Street,+Reno,+NV/@39.3491351,-119.9708704,10z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x809907750a53e70d:0xeb90377f91f273c6!2m2!1d-119.5554462!2d39.2362647!1m5!1m1!1s0x809940b641d717d3:0xbc6b4af4dc76d174!2m2!1d-119.8103159!2d39.5215417!3e0.

[3] Google Maps, Directions from 134 Lakes Blvd., Dayton, NV, 89403, to 501 W. 10th St., Fort Worth, TX, 76102,
https://www.google.com/maps/dir/134+Lakes+Blvd,+Dayton,+NV+89403/United+State+Cour

Finally, the factor of "all other practical problems that make trial of a case easy, expeditious and inexpensive," *Volkswagen*, 545 F.3d at 315, favors District of Nevada or is neutral. Both districts are capable of handling this case, though as explained in this memorandum, the District of Nevada is geographically closer to relevant evidence and potential witnesses and also has less court congestion. *See supra*, pp. 9-10, *infra* pp. 11-12.

### C.    The Public Interest Factors Favor the District of Nevada

Each of the public interest factors favors the District of Nevada over this district or is neutral between those two districts.

"[T]he administrative difficulties flowing from court congestion," *Volkswagen*, 545 F.3d at 315, favors the District of Nevada over this district. By several measures, this district is more congested than the District of Nevada. Sixteen judges (twelve active judges and four senior judges) hear cases in this district.[4] Twelve judges (seven active judges and five senior judges) hear cases in the District of Nevada.[5] As of March 31, 2022, there were 5,462 civil cases commenced in this district over the past year, or 341 per judge; there were 7,823 civil cases pending in this district, or 489 per judge.[6] By contrast, in the District of Nevada, there were 2,839 civil cases commenced over the past year, or 237 per judge (31% less than this district); there were 3,530 civil cases pending, or 294 per judge (40% less than this district).[7] The District of Nevada's criminal caseload is also lower than this district's criminal caseload, on an absolute and per-judge basis. As of March 31, 2022, there were 1,625 criminal cases

---

t+House,+501+W+10th+St,+Fort+Worth,+TX+76102/@34.8797147,-117.4723346,5z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x809907750a53e70d:0xeb90377f91f273c6!2m2!1d-119.5554462!2d39.2362647!1m5!1m1!1s0x864e716a50029aed:0xf54836742efeed7f!2m2!1d-97.3333436!2d32.7496312!3e0.

[4] U.S. District Court for the Northern District of Texas, Northern District Judges, https://www.txnd.uscourts.gov/northern-district-judges.

[5] U.S. District Court for the District of Nevada, Judges, https://www.nvd.uscourts.gov/court-information/judges/.

[6] United States Courts, Federal Judicial Caseload Statistics 2022 Tables, Table C, https://www.uscourts.gov/file/44146/download.

[7] *Id.*

commenced in this district over the past year, or 102 per judge; there were 2,313 criminal cases pending in this district, or 145 per judge.[8]  By contrast, in the District of Nevada, there were 359 criminal cases commenced over the past year, or 30 per judge (71% less than this district); there were 1,126 criminal cases pending, or 94 per judge (35% less than this district).[9]  Consideration of court congestion therefore favors District of Nevada over this district.[10]  Indeed, when transferring a case to another district, a judge in the Fort Worth Division of this district recently commented, "the Court has a very busy docket, with little capacity to hear cases better suited in another venue."  *Sigoloff* 2023 WL 2142982, at *4.

"[T]he local interest in having localized interests decided at home," *Volkswagen*, 545 F.3d at 315, strongly favors the District of Nevada over this district.  In this case, a company based and incorporated in Nevada challenges the legality of federal regulatory actions, including a letter that ATF sent to Plaintiff's Nevada headquarters classifying some of Plaintiff's products.  Nevada has a strong interest in having a dispute over the legality of a Nevada company's business practices and the classification of a Nevada company's products under federal law being decided in Nevada.  By contrast, this district has minimal interest in the controversy, as this district is just one of many places throughout the country where Plaintiff sells its products.  In *Volkswagen*, the Fifth Circuit rejected the argument that the Eastern District of Texas had a localized interest in a products liability lawsuit merely because the type of product at issue was available, reasoning that this argument "stretches logic

---

[8]  United States Courts, Federal Judicial Caseload Statistics 2022 Tables, Table D, https://www.uscourts.gov/file/44160/download.

[9]  *Id.*

[10]  There are nine magistrate judges serving in this district and seven magistrate judges serving in the District of Nevada.  *See* U.S. District Court for the Northern District of Texas, Northern District Judges, https://www.txnd.uscourts.gov/northern-district-judges; U.S. District Court for the District of Nevada, Judges, https://www.nvd.uscourts.gov/court-information/judges/.  Including magistrate judges in the per-judge caseload statistics would not change the conclusion that this district has a higher civil and criminal caseload per judge than the District of Nevada.

in a manner that eviscerates the public interest that this factor attempts to capture." 545 F.3d at 318. Such a rationale "could apply virtually to any judicial district or division in the United States; it leaves no room for consideration of those actually affected—directly and indirectly—by the controversies and events giving rise to a case." *Id.* So too, here, the allegation that Plaintiff, a Nevada-based company, "distributes its products throughout the United States, including in this district," Compl. ¶ 18, does not support a localized interest here.

"[T]he familiarity of the forum with the law that will govern the case," *Volkswagen*, 545 F.3d at 315, is neutral. This case is governed by federal law, and concerns several constitutional provisions, the APA, and federal firearms laws. Both this district and the District of Nevada are familiar with these bodies of law and are capable of adjudicating disputes involving these bodies of law.

"[T]he avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law," *id.*, is also neutral. Again, this case is governed by federal law. It does not raise any problems of conflict of laws or application of foreign law.

**D.     Good Cause Exists to Transfer this Case to the District of Nevada**

Good cause exists to transfer this case to the District of Nevada. "When the movant demonstrates that the transferee venue is clearly more convenient, . . . it has shown good cause and the district court should therefore grant the transfer." *Volkswagen*, 545 F.3d at 315. The District of Nevada is clearly more convenient, as shown by the fact that at least five of the eight public and private interest factors favor the District of Nevada, and no factor favors this district. The District of Nevada has a strong localized interest in this dispute about the application of federal firearms laws to a company based and incorporated in Nevada. Any relevant factual evidence or witnesses are likely to be located in Nevada. And the District of Nevada is less congested than this district. "[T]he convenience of parties and witnesses," 28 U.S.C. § 1404(a), supports transfer.

Furthermore, "the interest of justice," *id.*, supports transfer. The only apparent reason for Plaintiff to have filed this lawsuit in a venue far from its home with no meaningful connection to this dispute is forum-shopping and judge-shopping. Although multiple district courts have rejected motions seeking preliminary injunctions against application of the Rule, *see Morehouse Enters. v. ATF*, No. 3:22-CV-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022), *appeal docketed, Arizona v. ATF,* No. 22-2812 (8th Cir.); *Div. 80, LLC v. Garland*, No. 3:22-CV-148, 2022 WL 3648454 (S.D. Tex. Aug. 23, 2022), this Court is the only court to have granted such an injunction, *see VanDerStok v. Garland*, No. 4:22-cv-691-O, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022). By filing in the Fort Worth Division of this district (the same division as *VanDerStok*) and submitting a notice that Plaintiff considered *VanDerStok* to be a related case, *see* ECF No. 2, Plaintiff made it likely that this case would be assigned to the same judge presiding over *VanDerStok*. As Justice Gorsuch recently warned, "[t]here are currently more than 1,000 active and senior district court judges, sitting across 94 judicial districts," and thus "there is a nearly boundless opportunity" for plaintiffs "to shop for a friendly forum." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600-01 (2020) (Gorsuch, J. concurring). Plaintiff's apparent forum-shopping and judge-shopping practice conflicts with the principle that, "[i]n federal court, the parties clearly have no right to a 'judge of their choice,'" *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983).[11] The interests of justice do not support indulging Plaintiff's apparent gamesmanship. If the Court does not dismiss the case outright, the Court should instead transfer the case to Plaintiff's home district, the District of Nevada, which unlike this district, has a significant connection to this dispute.

---

[11] That Plaintiff moved to intervene in *VanDerStok* on the same day Plaintiff filed this Complaint underscores that Plaintiff's goal is to appear before the judge presiding over *VanDerStok*.

## CONCLUSION

The Court should dismiss this lawsuit for improper venue.  Alternatively, the Court should transfer this case to the District of Nevada.


DATED: March 7, 2023                        Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General

                                            ALEXANDER K. HAAS
                                            Director, Federal Programs Branch

                                            LESLEY FARBY
                                            Assistant Director, Federal Programs Branch

                                            */s/ Jeremy S.B. Newman*
                                            DANIEL RIESS
                                            MARTIN M. TOMLINSON
                                            TAISA GOODNATURE
                                            JEREMY S.B. NEWMAN
                                            Trial Attorneys
                                            Civil Division, Federal Programs Branch
                                            U.S. Department of Justice
                                            1100 L Street, NW
                                            Washington, DC 20005
                                            Phone: (202) 532-3114
                                            Email: jeremy.s.newman@usdoj.gov
                                            *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On March 7, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jeremy S.B. Newman*