## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **Polymer80, Inc.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **MERRICK GARLAND, in his official** | ) | |
| **capacity as Attorney General of the United** | ) | |
| **States; UNITED STATES** | ) | **Civil Action No.** |
| **DEPARTMENT OF JUSTICE; STEVEN** | ) | **4:23-cv-00029-O** |
| **DETTELBACH, in his official capacity as** | ) | |
| **Director of the Bureau of Alcohol,** | ) | |
| **Tobacco, Firearms and Explosives; and** | ) | |
| **BUREAU OF ALCOHOL, TOBACCO,** | ) | |
| **FIREARMS AND EXPLOSIVES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
## <u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 4

I.      Background ........................................................................................................... 4

        A.      Polymer80 and the DIY Home Build Market ........................................... 4

        B.      The Gun Control Act ................................................................................ 6

        C.      The ATF's Final Rule ................................................................................ 8

        D.      The ATF's Open Letter ............................................................................. 9

        E.      The ATF's Polymer80 Letter .................................................................... 9

II.     This Court has already determined that the Final Rule exceeds the ATF's statutory
        authority under the plain language of the Gun Control Act but has not been asked
        to address the Open Letter or Polymer80 Letter. ........................................... 10

ARGUMENT ................................................................................................................... 11

I.      Polymer80 is likely to succeed on the merits of its claims because the Final Rule,
        Open Letter, and Polymer80 Letter exceed the ATF's authority under the plain
        language of the Gun Control Act and violate the First, Second, and Fifth
        Amendments. ................................................................................................... 12

        A.      This Court has already held that the Final Rule exceeds the ATF's authority
                under the Gun Control Act because its redefinition of "frame or receiver"
                and treatment of parts kits are inconsistent with the Gun Control Act's plain
                language. .............................................................................................. 13

        B.      The Open Letter and Polymer80 Letter also exceed the ATF's authority
                under the Gun Control Act and are arbitrary and capricious because they
                rely on impermissible constructions of the Gun Control Act and Final Rule.
                .............................................................................................................. 13

        C.      This Court has already held that the ATF may not implement the Final Rule
                as to a manufacturer like Polymer80. ..................................................... 14

        D.      The Final Rule, Open Letter, and Polymer80 Letter violate Polymer80's and
                its customers' First, Second, and Fifth Amendment rights. ................... 14

     i.     The Final Rule is a content-based restriction on protected speech and cannot survive strict scrutiny. .......................................................... 14

     ii.    The Final Rule, Open Letter, and Polymer80 Letter regulate conduct protected by the Second Amendment in a way that is inconsistent with the Nation's historical tradition of firearm regulation. ................................................................................... 16

     iii.   The Final Rule, Open Letter, and Polymer80 Letter effectuate a regulatory taking without just compensation, and the Final Letter's definitions of "frame or receiver," "readily," and "firearm" are unconstitutionally vague. ...................................................... 18

II.    There is a substantial threat that the Final Rule, Open Letter, and Polymer80 Letter will irreparably harm Polymer80 and its customers by forcing Polymer80 to comply with an unlawful regulation and threatening to put Polymer80 out of business............. 21

III.   The balance of equities and public interest favor enjoining the Final Rule, Open Letter, and Polymer80 Letter for the same reasons this Court enjoined the Final rule as to manufacturers like Polymer80................................................................................ 23

CONCLUSION........................................................................................................ 25

CERTIFICATE OF SERVICE ................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Legal Found. of Washington*,
    538 U.S. 216 (2003)................................................................................................18

*Cargill v. Garland*,
    57 F.4th 447 (5th Cir. 2023) (en banc) ................................................................13

*City of Dallas v. Delta Air Lines, Inc.*,
    847 F.3d 279 (5th Cir. 2017) ................................................................................11

*Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*,
    600 F.2d 1184 (5th Cir. 1979) ..............................................................................12

*Ezell v. Chicago*,
    651 F.3d 684 (7th Cir. 2011) ................................................................................16

*Family Rehab., Inc. v. Azar*,
    3:17-CV-3008, 2018 WL 3155911 (N.D. Tex. June 28, 2018)............................12

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012)..............................................................................................19

*FCC v. League of Women Voters of Cal.*,
    468 U.S. 364 (1984)..............................................................................................14

*Greatness v. FEC*,
    831 F.3d 500 (D.C. Cir. 2016)..............................................................................15

*Heller v. District of Columbia*,
    554 U.S. 570 (2008)..............................................................................................16

*Horne v. Dep't of Agric.*,
    135 S. Ct. 2419 (2015)..........................................................................................18

*IMS Health Inc. v. Sorrell*,
    630 F.3d 263 (2d Cir. 2010)..................................................................................14

*Jackson v. City and County of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) ................................................................................16

*Janvey v. Alguire*,
    647 F.3d 585 (5th Cir. 2011) ................................................................................12

*Lingle v. Chevron USA, Inc.*,
    544 U.S. 528 (2005)...........................................................................................18

*Luis v. United States*,
    578 U.S. 5 (2016)...............................................................................................16

*Maryland Shall Issue, Inc. v. Hogan*,
    971 F.3d 199 (4th Cir. 2020) .............................................................................16

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022).............................................................................15, 16, 17

*Newby v. Enron Corp.*,
    188 F. Supp. 2d 684 (S.D. Tex. 2002) ...............................................................11

*Nken v. Holder*,
    556 U.S. 418 (2009)...........................................................................................11

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018).......................................................................................19

*Shamloo v. Miss. State Bd. of Trustees of Insts. of Higher Learning*,
    620 F.2d 516 (5th Cir. 1980) .............................................................................19

*Tesfamichael v. Gonzales*,
    411 F.3d 169 (5th Cir. 2005). ............................................................................12

*Tex. Entm't Ass'n, Inc. v. Hegar*,
    10 F.4th 495 (5th Cir. 2021) ..............................................................................15

*Texas v. Seatrain Int'l, S.A.*,
    518 F.2d 175 (5th Cir. 1975) .............................................................................12

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) .............................................................................23

*Timpinaro v. SEC*,
    2 F.3d 453 (D.C. Cir. 1993)...............................................................................20

*U.S. Navy SEALs 1–26 v. Biden*,
    578 F. Supp. 3d 822 (N.D. Tex. 2022) ..............................................................24

*United States v. Davis*,
    139 S. Ct. 2319 (2019).......................................................................................19

*Univ. of Texas v. Camenisch*,
    451 U.S. 390 (1981)...........................................................................................11

*VanDerStok v. BlackHawk Mfg. Grp. Inc.*,
No. 4:22-CV-00691-O, 2022 WL 16680915 (N.D. Tex. Nov. 3, 2022) ........................ *passim*

*VanDerStok v. BlackHawk Mfg. Grp. Inc.*,
No. 4:22-CV-00691-O, 2023 WL 2347438 (N.D. Tex. Mar. 2, 2023) ........................... *passim*

*VanDerStok v. Garland*,
No. 4:22-cv-00691-O ....................................................................................................1, 2, 10

*VanDerStok v. Garland*,
No. 4:22-CV-00691-O 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022) ........................... *passim*

*VanDerStok v. Garland*,
No. 4:22-CV-00691-O, 2022 WL 4809376 (N.D. Tex. Oct. 1, 2022) .................................2, 22

*VanDerStok v. Garland*,
No. 4:22-CV-00691-O, 2022 WL 6081194 (N.D. Tex. Sept. 26, 2022) ....................2, 3, 9, 14

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S.489, 499 (1982) ..........................................................................................................19

**Statutes and Regulations**

5 U.S.C. § 705 ..........................................................................................................................13

18 U.S.C. § 921(a)(3) ................................................................................................................6

18 U.S.C. § 921(a)(3)(B) ...........................................................................................................9

18 U.S.C. § 924(a)(1)(D) ..........................................................................................................19

27 C.F.R. § 478.11 ...........................................................................................................6, 9, 13

27 C.F.R. § 478.12(a)(1) .........................................................................................................8, 9

27 C.F.R. § 478.12(a)(2) ............................................................................................................8

27 C.F.R. § 478.12(c) ...........................................................................................................9, 13

43 Fed. Reg. 13,531 (Mar. 31, 1978) ........................................................................................6

43 Fed. Reg. 13,537 (Mar. 31, 1978) ........................................................................................6

87 Fed. Reg. 24,652 (Apr. 26, 2022) .........................................................................................8

**Other Authorities**

*About Polymer80*, https://www.polymer80.com/about-us (last visited March 5,
2023) ...........................................................................................................................................4

*American Tradition of Self-Made Arms*, at 1 ................................................................17

ATF, *Comments on Proposed Rule 2021R-05* ...........................................................5, 8

ATF Final Rule 2021R-05F ............................................................................ *passim*

ATF proposed rule 2021R–05, titled Definition of "Frame or Receiver" and
      Identification of Firearms, 86 Fed. Reg. 27,720 (May 21, 2021) ...........................8

ATF, *Regulatory Impact Analysis and Final Regulatory Flexibility Analysis* 124
      (Apr. 2022)........................................................................................................22

ATF, *Regulatory Impact Analysis and Final Regulatory Flexibility Analysis* (Apr.
      2022) ...........................................................................................................5, 22

Fed. Defs.' Mot. Dismiss, *California v. ATF*, No. 3:20-CV-06761, 2020 WL
      9849685 (N.D. Cal. Nov. 30, 2020), ECF No. 29 ...................................................7

Fed. Defs.' Mot. for Summ. J., *City of Syracuse v. ATF*, No. 1:20-CV-06885
      (S.D.N.Y. Jan. 29, 2021), ECF No. 98 ...................................................................7

H.R. 1454, 117th Cong. (2021).............................................................................8

Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms*, 54 ST.
      MARY'S L.J. (Apr. 11, 2022) ................................................................................16

S. 1558, 117th Cong. (2021)..................................................................................8

*Stop Gun Violence: Ghost Guns: Hearing Before the Subcomm. on the
      Constitution, of the S. Comm. on the Judiciary*, 117th Cong. 5 (2021).................5, 8, 16

Thomas Jefferson, 3 Writings 558 (H.A. Washington ed., 1853) ........................16, 17

U.S. Const. amend I ................................................................................1, 14, 15

U.S. Const. amend II ........................................................................1, 15, 16, 17

U.S. Const. amend V.........................................................................1, 3, 14, 18

## INTRODUCTION

Polymer80, Inc. ("Polymer80") seeks a temporary restraining order and preliminary injunction because the irreparable harms caused by the Defendants' unlawful and unconstitutional actions have imperiled the continued existence of Polymer80's business operations. The injunctive relief Polymer80 seeks cannot wait for the conclusion of the parties' summary judgment and intervention briefing in the related case of *VanDerStok v. Garland*, No. 4:22-cv-00691-O, in which Polymer80 seeks to intervene. *See id.* at ECF 157.

The ATF has exceeded its statutory authority by creating and implementing a new definition of "firearm" that prevents Polymer80 from selling the lifeblood of its business: a partial "frame or receiver" and firearm parts kits. Defendants' enforcement and implementation of this new definition of firearm target Polymer80 specifically. The new definition of firearm contradicts the plain language of the Gun Control Act and violates Polymer80's and its customers' First, Second, and Fifth Amendment rights, causing them irreparable harm.

To preserve the relative positions (or, at this point, the continued survival of Polymer80's business operations) of the parties until a trial on the merits can be held, this Court should issue an order temporarily restraining and preliminarily enjoining Defendants from enforcing and implementing against Polymer80 and its customers the following:

- The ATF Final Rule 2021R-05F (the "Final Rule") (App. 009–106);

- The ATF's December 27, 2022 Open Letter to All Firearms Licensees (the "Open Letter") (App. 108–117); and

- The ATF's December 27, 2022 Letter to Polymer80 (the "Polymer80 Letter") (App. 119–128).

This Court has already considered and resolved issues conclusively demonstrating Polymer80's entitlement to the relief it seeks. In *VanDerStok*, this Court has issued five orders that support this Motion:

1. *VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022) ("*VanDerStok I*") (ECF 56, preliminarily enjoining Defendants from enforcing the Final Rule against Tactical Machining, LLC's ("Tactical")).

2. *VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 6081194 (N.D. Tex. Sept. 26, 2022) ("*VanDerStok II*") (ECF 84, preliminarily enjoining Defendants from implementing the Final Rule through a classification letter regarding Tactical's products).

3. *VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 4809376 (N.D. Tex. Oct. 1, 2022) ("*VanDerStok III*") (ECF 89, expanding the preliminary injunction to enjoin Defendants from enforcing the Final Rule against Tactical's customers).

4. *VanDerStok v. BlackHawk Mfg. Grp. Inc.*, No. 4:22-CV-00691-O, 2022 WL 16680915 (N.D. Tex. Nov. 3, 2022) ("*VanDerStok IV*") (ECF 118, preliminarily enjoining Defendants from enforcing the Final Rule against BlackHawk Manufacturing Group, Inc. ("BlackHawk") and its customers).

5. *VanDerStok v. BlackHawk Mfg. Grp. Inc.*, No. 4:22-CV-00691-O, 2023 WL 2347438 (N.D. Tex. Mar. 2, 2023) ("*VanDerStok V*") (ECF 188, preliminarily enjoining Defendants from enforcing the Final Rule against Defense Distributed, which sells Polymer80 products, and its customers).

Temporarily restraining and preliminarily enjoining the Final Rule is necessary to protect Polymer80 and its customers just as it was necessary to protect Tactical, Blackhawk, Defense

Distributed and their customers. Polymer80 is likely to succeed on the merits of its claims because it is irreparably harmed, and, as this Court has thrice made clear, "[t]he Final Rule exceeds [the] ATF's statutory authority under the plain language of the Gun Control Act" because "[p]arts that *may become* receivers are not receivers" and "[a] weapon kit is not a firearm." *VanDerStok I*, 2022 WL 4009048, at *3; *see also VanDerStok IV*, 2022 WL 16680915, at *3 ("[T]he Court incorporates by reference the reasoning in its First Opinion."); *VanDerStok V*, 2023 WL 2347438, at *2 ("This element has already been proved because the Court previously determined that claims challenging the Final Rule on grounds that it was issued in excess of ATF's statutory authority are likely to prevail on the merits."). The Final Rule also violates Polymer80's and its customers' First, Second, and Fifth Amendment rights.

The Open Letter and Polymer80 Letter implement the unlawful Final Rule against Polymer80. They rely on the Final Rule's impermissible constructions of the Gun Control Act. This Court has already enjoined the ATF from issuing a classification letter under the Final Rule regarding Tactical's products because "implementation" of the Final Rule is "likely unlawful," since implementation of the Final Rule "would place Tactical at risk of an enforcement action." *VanDerStok II*, 2022 WL 6081194, at *2. The Polymer80 Letter is similarly unlawful, and its enforcement and implementation should be enjoined.

Like Tactical, Blackhawk, and Defense Distributed, Polymer80 faces a substantial threat of irreparable harm because Polymer80 must either comply with the unlawful Final Rule, Open Letter, and Polymer80 Letter or face going out of business. *See VanDerStok I*, 2022 WL 4009048, at *8 (holding that both injuries are irreparable harms); *see also VanDerStok IV*, 2022 WL 16680915, at *3 (same); *VanDerStok V*, 2023 WL 2347438, at *3 (same).

Balancing the equities and public interest weighs in favor of granting a temporary restraining order and entering a preliminary injunction because "any injury to the Government's general interest in law enforcement and public safety is appreciably undermined by this Court's preliminary determination that the Final Rule is likely unlawful" and because Polymer80's "liberty interest—as law-abiding citizens who wish to engage in historically lawful conduct (the purchase and sale of now-regulated parts)—outweighs the Government's remaining interest in preventing prohibited persons from unlawfully possessing firearms." *See VanDerStok IV*, 2022 WL 16680915, at *4; *see also VanDerStok I*, 2022 WL 4009048, at *10; *VanDerStok V*, 2023 WL 2347438, at *4.

## STATEMENT OF FACTS

### I.    Background

#### A.    Polymer80 and the DIY Home Build Market

Polymer80 designs, manufactures, markets, and distributes firearms, non-firearm products, and other innovative components and accessories. *See* App. 002 (Declaration of Loran L. Kelley, Jr. ("Kelley Decl."), ¶ 4). Polymer80 allows its law-abiding, responsible customers to "express[] their right to bear arms" by "participat[ing] in the build process." *About Polymer80*, https://www.polymer80.com/about-us (last visited March 5, 2023). Polymer80 has been and is the industry leader in the design, manufacture, and distribution of firearm parts kits and frame and receiver blanks. *See* App. 003 (Kelley Decl., ¶ 5). Frame and receiver blanks are not yet frames or receivers; they are raw materials that have undergone some but not all of the manufacturing necessary to produce a complete, functioning frame or receiver. App. 003–004 (*Id*. at ¶¶ 5–11). Blanks are inoperable as frames or receivers. App. 003–004 (*Id*.). Parts kits are likewise not yet firearms. App. 003–004 (*Id*.). They are instead, as their name describes, parts of a firearm. App.

003–004 (*Id*.). Polymer80's business model and continued existence depend on sales of firearm parts kits and frame and receiver blanks. App. 005–006 (*Id*. at ¶¶ 15–16).

Polymer80 provides its customers the means to practice the longstanding American tradition of creating a constitutionally-protected instrument. App. 003 (*Id*. at ¶ 5). Privately making firearms is an American tradition that dates back to the American Revolution. *Stop Gun Violence: Ghost Guns: Hearing Before the Subcomm. on the Constitution, of the S. Comm. on the Judiciary*, 117th Cong. 5 (2021) (testimony of Ashley Hlebinsky).[1] Polymer80's customers carry on this American tradition. These law-abiding, responsible citizens cherish the right of Americans to use machinery to build their own constitutionally-protected firearms.

The products at issue in this case, parts kits and frame and receiver blanks, are popular among Polymer80's customers, who appreciate the challenge of using machinery to build a firearm from raw materials and unfinished components. App. 003 (Kelley Decl., ¶ 6). Polymer80's business model and continued existence depend on sales of firearm parts kits and frame and receiver blanks. App. 005–006 (*Id*. ¶ 15).

Through the Final Letter, Open Letter, and Polymer80 Letter, Defendants seek to eradicate this tradition and, by extension, Polymer80. The ATF is well-aware that its unlawful actions will affect more than 130,000 businesses, resulting in the dissolution of some. *See* ATF, *Regulatory Impact Analysis and Final Regulatory Flexibility Analysis*, 124–25 (Apr. 2022).[2] The industry leader, Polymer80, is not above this intended consequence. The Final Rule, in conjunction with the Open Letter and the Polymer80 Letter, have caused profound economic harm to Polymer80 and threaten its very existence as a going concern. App. 005–006 (Kelley Decl., ¶¶ 14–16).

---

[1] *Available at*
https://www.judiciary.senate.gov/imo/media/doc/Ashley%20Hlebinsky%20Written%20Testimony%20Final.pdf.
[2] *Available at* https://www.atf.gov/firearms/docs/rulemaking/ria-final-rule-2021r-05f-definition-frame-or-receiver-and-identification/download.

Polymer80 likely cannot survive as a corporate entity under the Final Rule, Open Letter, and Polymer80 Letter. App. 006 (*Id.* ¶ 16).

### B.   The Gun Control Act

Congress enacted the Gun Control Act in 1968, establishing a four-part definition of what constitutes a "firearm":

> The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

18 U.S.C. § 921(a)(3). The definition of firearm has not since been amended by Congress. The term "frame or receiver" in subsection (B) of the Gun Control Act is not defined by statute.

In 1978, the ATF established a definition for "frame or receiver": "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 27 C.F.R. § 478.11; *see also* Title and Definition Changes, 43 Fed. Reg. 13,531, 13,537 (Mar. 31, 1978).

From 1978 through 2021, the ATF did not consider frame and receiver blanks to be receivers (and therefore firearms under the Gun Control Act). During this time, ATF issued Polymer80 three written classification letters, both determining that Polymer80's frame and receiver blanks are not "firearm[s]." *See* App. 130–148 (Classification Letter, Bureau of Alcohol, Tobacco, Firearms and Explosives (Nov. 2, 2015) (determining that Polymer80's Glock-type GC9 pistol frame blank and Polymer80's Warrhogg receiver blank are not firearms)); App. 150–156 (Classification Letter, Bureau of Alcohol, Tobacco, Firearms and Explosives (Jan. 18, 2017) (determining that Polymer80's PF940C pistol blank frame is not a firearm)); App. 158–159 (Classification Letter, Bureau of Alcohol, Tobacco, Firearms and Explosives (Feb. 3, 2015) (determining that Polymer80's AR-15 pattern receiver blank is not a firearm). Based on these

classification letters and the ATF's longstanding position that frame and receiver blanks are not firearms, Polymer80 invested capital and sold lawful products to customers. App. 003–004 (Kelley Decl., ¶¶ 8–10).

As recently as November 2020 and January 2021, Defendants confirmed the ATF's classification determinations in federal courts:

> Plaintiffs' challenges to ATF's classifications also seek to undercut the process under which, for decades, ATF has reviewed numerous items to determine if they should be classified as "firearms" under the [Gun Control Act], bringing to bear the agency's technical, scientific, mechanical, and legal expertise. . . . The longstanding position of ATF is that, where a block of metal (or other material) that may someday be manufactured into a receiver bears no markings that delineate where the fire-control cavity is to be formed and has not yet been even partially formed, that item is not yet a receiver . . . .

Fed. Defs.' Mot. Dismiss, *California v. ATF*, No. 3:20-CV-06761, 2020 WL 9849685 (N.D. Cal. Nov. 30, 2020), ECF No. 29 at 11.[3] Defendants emphasized the ATF's consistent application of classification standards spanning more than four decades:

> The Record contains classification letters dating back to the 1970s. These classification letters make plain that ATF has consistently adopted a standard whereby the degree of machining to the frame or receiver determined whether the device constituted a firearm . . . . Not one of the above-noted classification letters made reference to the amount of time that would be required to transform the given device into a fully functional frame or receiver. Further, these letters are only a few of the examples contained in the Record of ATF making determinations based on the degree of machining performed on the unfinished frame or receiver with no reference whatsoever to the time required to transform the device into a fully functional frame or receiver.

Fed. Defs.' Mot. for Summ. J., *City of Syracuse v. ATF*, No. 1:20-CV-06885 (S.D.N.Y. Jan. 29, 2021), ECF No. 98 at 40–42.[4]

Defendants have likewise consistently considered parts kits to not be firearms under the Gun Control Act. Less than two years ago, Defendants confirmed that Congress's definition of

---

[3] *Available at* https://storage.courtlistener.com/recap/gov.uscourts.cand.366534/gov.uscourts.cand.366534.29.0.pdf.
[4] *Available at* https://storage.courtlistener.com/recap/gov.uscourts.nysd.542991/gov.uscourts.nysd.542991.98.0.pdf.

"firearm" excluded weapon parts: "As a statutory matter, Congress has legislatively defined a 'firearm' to be a weapon that may be readily converted to expel a projectile by the action of an explosive, or the frame or receiver of such weapon, but has explicitly excluded 'firearms parts' from that definition." Fed. Defs.' Mot. to Dismiss, *California v. ATF*, No. 3:20-cv-06761, 2020 WL 9849685 (N.D. Cal. Nov. 30, 2020), ECF No. 29 at 10. "Congress has chosen to exclude firearm parts from the scope of the [Gun Control Act], including parts that could be assembled with a homemade receiver and frame to make a firearm." *Id*. at ECF No. 29 at 20.

### C.     The ATF's Final Rule

After President Biden took office, Congress rejected bills that would have changed the way the ATF classifies frame and receiver blanks. *See, e.g*., S. 1558, 117th Cong. (2021); H.R. 1454, 117th Cong. (2021). Senator Richard Blumenthal, the sponsor of S. 1558, admitted that these bills were necessary to regulate frame and receiver blanks because "they are guns, except under federal law." *Stop Gun Violence*, at 22:20 (statement of Sen. Blumenthal).[5]

The Biden Administration thereafter turned to unilateral executive action. On May 7, 2021, Attorney General Garland announced ATF proposed rule 2021R–05, titled Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27,720 (May 21, 2021). During the 90-day comment period for the proposed rule—from May 21 to August 19, 2021—the public submitted approximately 290,000 comments on the proposed rule. ATF, *Comments on Proposed Rule 2021R-05*.[6]

In April 2022, the ATF published the Final Rule. The Final Rule changed, among other things, the 1978 definition of "frame or receiver." *See* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (codified at 27 C.F.R. pts. 447,

---

[5] *Available at* https://www.judiciary.senate.gov/meetings/stop-gun-violence-ghost-guns.
[6] *Available at* https://www.atf.gov/rules-and-regulations/definition-frame-or-receiver/submit-comment.

478, and 479 (2022)). The final rule took effect on August 24, 2022. *See* 27 C.F.R. pts. 447, 478, and 479 (2022). The ATF split the phrase "Frame or Receiver" into two parts, assigning the term "frame" to handguns and the term "receiver" to any firearm other than a handgun, such as rifles and shotguns. *See* 27 C.F.R. § 478.12(a)(1), (a)(2).

"Rather than merely updating the terminology, ATF decided to regulate *partial* frames and receivers." *VanDerStok I*, 2022 WL 4009048, at *3 (emphasis in original). The Final Rule also changes and broadens the ATF's definition of "firearm" to include "a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." 27 C.F.R. § 478.11 (definition of "firearm").

### D.      The ATF's Open Letter

On December 27, 2022, after this Court enjoined Defendants from implementing the Final Rule against Tactical, *see VanDerStok II*, 2022 WL 6081194, at *2, the ATF issued the Open Letter, referencing by name several manufacturers of frame and receiver blanks, including Polymer80. *See* App. 108–117. The Open Letter took care not to reference Tactical. The Open Letter classifies certain of Polymer80's frame blanks as firearms under the Gun Control Act and the Final Rule. The Open Letter is an unsupportable reversal of the ATF's previous determinations that Polymer80 pistol frame or receiver blanks are not firearms under the meaning of the Gun Control Act. *See* App. 108–117.

### E.      The ATF's Polymer80 Letter

Also on December 27, 2022, the ATF implemented the Final Rule and Open Letter to several of Polymer80's frame or receiver blanks, classifying them as a "'frame' and also a 'firearm', as defined in the GCA, 18 U.S.C. § 921(a)(3)(B), and implementing regulations, 27 CFR 478.12(a)(1), (c)." App. 119. The Polymer80 Letter was sent only to Polymer80 and was not prompted by Polymer80. App. 004–005 (Kelley Decl., ¶ 12).

9

II.    **This Court has already determined that the Final Rule exceeds the ATF's statutory authority under the plain language of the Gun Control Act but has not been asked to address the Open Letter or Polymer80 Letter.**

In granting Tactical's, BlackHawk's, and Defense Distributed's motions for preliminary injunction, this Court held that those plaintiffs were likely to succeed on their claims that the Final Rule exceeds the ATF's statutory authority under the plain language of the Gun Control Act in two ways: first, it "expands ATF's authority over parts that may be 'readily converted' into frames or receivers, when Congress limited ATF's authority to 'frames or receivers' as such"; and second, it "unlawfully treats weapon parts kits as firearms." *VanDerStok I*, 2022 WL 4009048, at *3. *VanDerStok IV* and *VanDerStok V* incorporated these holdings and analyses. 2022 WL 16680915, at *2–3; 2023 WL 2347438, at *2–3.

The Final Rule exceeds the ATF's statutory authority under the plain language of the Gun Control Act by claiming authority over parts that may be 'readily converted' into frames or receivers, when Congress limited ATF's authority to 'frames or receivers' as such. This Court has already held: "Parts that may become receivers are not receivers." *VanDerStok I*, 2022 WL 4009048, at *3. The "text of the Gun Control Act resolves [Tactical's] motion" because:

> The Final Rule's redefinition of "frame or receiver" conflicts with the statute's plain meaning. The definition of "firearm" in the Gun Control Act does not cover all firearm parts. It covers specifically "the frame or receiver of any such weapon" that Congress defined as a firearm. 18 U.S.C. § 921(a)(3)(B). That which *may become* a receiver is not itself a receiver.

*Id*. at *3–4 (emphasis in original). The ATF's expanded definitions in the Final Rule were "facially unlawful" because:

> Congress excluded other adjectives that ATF adds to its definition. The Final Rule covers "disassembled" and "nonfunctional" frames and receivers. 27 C.F.R. § 478.12(c). Congress's definition does not. … ATF's expansion in § 478.12(c) . . . covers *additional* parts that are "designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver." 27 C.F.R. § 478.12(c). But Congress intentionally omitted that language from the definition. Section 478.12(c) is thus facially unlawful because it describes only

10

parts that Congress intentionally excluded from its definition of "firearm." It is purely an expansion of authority beyond the statutory language.

*Id*. at *4–5 (emphasis in original).

The Final Rule also exceeds the ATF's statutory authority under the plain language of the Gun Control Act by unlawfully treating parts kits as firearms. *Id*. at *6. This Court has already held: "A weapon parts kit is not a firearm." *Id*. The Final Rule's use of "weapons parts kits" impermissibly expands the ATF's authority beyond the Gun Control Act's plain language:

> The Final Rule contains its own definition of "firearm," notwithstanding that the Gun Control Act already defines the term. Under the Final Rule, "[t]he term shall include a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." 27 C.F.R. § 478.11 (definition of "firearm"). That language conflicts with the statute's definition of "firearm."
>
> ATF has no general authority to regulate weapon parts. But the Final Rule grants ATF that general authority by copying language used throughout the statutory definition . . ., unlawfully expand[ing] ATF's authority beyond the boundaries set by the Gun Control Act.

*Id*. at *6.

Tactical, BlackHawk, and Defense Distributed do not challenge the Open Letter or Polymer80 Letter. Those parties are not referenced in either letter.

## ARGUMENT

Polymer80 seeks a temporary restraining order and preliminary injunction to "preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained," *City of Dallas v. Delta Air Lines, Inc*., 847 F.3d 279, 285 (5th Cir. 2017), because the Final Rule, Open Letter, and Polymer80 Letter are unlawful and likely will destroy Polymer80's business, App. 005–006 (Kelley Decl., ¶¶ 15–16).

Courts look to four factors in deciding whether to grant a temporary restraining order: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be

11

enjoined; and (4) granting the injunctive relief will not disserve the public interest." *Id*. The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The elements for relief are the same whether the plaintiff seeks a preliminary injunction or a temporary restraining order. *See Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 707 (S.D. Tex. 2002).

Temporary restraining orders and preliminary injunctions preserve the relative positions of the parties until a trial on the merits can be held. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Plaintiffs are not required to prove their case in full or show entitlement to summary judgement; all that is required is that Plaintiffs present a prima facie case based on the standards provided by the substantive law. *See Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011).

Each factor establishes that the Court should enter a temporary restraining order and preliminary injunction, temporarily restraining and enjoining Defendants from enforcing the Final Rule, Open Letter, and Polymer80 Letter against Polymer80 and its customers.

I.      **Polymer80 is likely to succeed on the merits of its claims because the Final Rule, Open Letter, and Polymer80 Letter exceed the ATF's authority under the plain language of the Gun Control Act and violate the First, Second, and Fifth Amendments.**

The likelihood of success on the merits is "arguably the most important" of the four factors necessary to grant a preliminary injunction. *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005). This factor is met when "the court cannot say there is no likelihood of prevailing on the merits but finds the factor of substantial likelihood of success present to some degree." *Family Rehab., Inc. v. Azar*, 3:17-CV-3008, 2018 WL 3155911, at \*3 (N.D. Tex. June 28, 2018). A movant "is not required to prove to a moral certainty that his is the only correct position." *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975). "A preliminary injunction may issue . . . despite the existence of a plausible defense, as long as the movant demonstrates a substantial likelihood of

success." *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1188 (5th Cir. 1979).

A.    **This Court has already held that the Final Rule exceeds the ATF's authority under the Gun Control Act because its redefinition of "frame or receiver" and treatment of parts kits are inconsistent with the Gun Control Act's plain language.**

This Court has already found that Polymer80's claim that the Final Rule exceeds the ATF's statutory authority is likely to prevail on the merits. *Compare VanDerStok I*, 2022 WL 4009048, at *2–7 (finding, *inter alia*, that provisions of the Final Rule are "facially unlawful," that the Final Rule is outside the scope of ATF's authority under the Gun Control Act, and that the Final Rule unlawfully treats parts kits as firearms) *with* Complaint, ECF 1, at Count III; *see also Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023) (en banc) (confirming the correctness of the analysis this Court used to hold that the Final Rule likely violates the Administrative Procedures Act ("APA")). This Court should again, using the same analysis, hold that the Final Rule likely violates the APA.

B.    **The Open Letter and Polymer80 Letter also exceed the ATF's authority under the Gun Control Act and are arbitrary and capricious because they rely on impermissible constructions of the Gun Control Act and Final Rule.**

Polymer80 is likely to succeed on the merits of its claim that the Open Letter and Polymer80 Letter exceed the ATF's authority under the Gun Control Act because both letters implement the unlawful Final Rule's new definition of "frame or receiver." The Open Letter uses the Final Rule to conclude that, contrary to the plain language of the Gun Control Act, Polymer80's unfinished receivers are receivers. App. 108, 116–117.

The Polymer80 Letter, for the same reason, also exceeds the ATF's authority under the Gun Control Act. The Polymer80 Letter also uses the Final Rule to conclude that, contrary to the plain language of the Gun Control Act, Polymer80's unfinished receivers are receivers. App. 119, 127–128.

13

**C.      This Court has already held that the ATF may not implement the Final Rule as to a manufacturer like Polymer80.**

The APA empowers this Court to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The Open Letter and Polymer80 Letter contravene the injunction of the Final Rule requested by Polymer80. *See id*. Defendants should not be permitted to collaterally implement the unlawful Final Rule by enforcing it through letters to Polymer80.

This Court has already enjoined Defendants from implementing the Final Rule through a classification letter against Tactical, holding that "[a]llowing ATF to apply its Rule . . . constitutes 'implementation' of 27 C.F.R. § 478.11 and 478.12(c), which this Court has said are likely unlawful." *VanDerStok II*, 2022 WL 6081194, at *2. An injunction was necessary to protect Tactical against "enforcement action . . . 'against' Tactical." *Id*. ("[I]ssuing such an agency determination that . . . would place Tactical at risk of an enforcement action, qualifies as agency action taken 'against' Tactical."). For these same reasons, this Court should also enjoin Defendants from implementing the Final Rule against Polymer80 through the Open Letter and Polymer80 Letter.

**D.      The Final Rule, Open Letter, and Polymer80 Letter violate Polymer80's and its customers' First, Second, and Fifth Amendment rights.**

Polymer80 is likely to succeed on the merits of its claim that the Final Rule violates the First Amendment. It is also likely to succeed on the merits of its claims that the Final Rule, Open Letter, and Polymer80 Letter violate the Second and Fifth Amendments.

**i.      The Final Rule is a content-based restriction on protected speech and cannot survive strict scrutiny.**

The Final Rule empowers the ATF "Director [to] consider any available instructions, guides, templates, jigs, equipment, tools, or marketing materials." Final Rule at 24,678.

Instructions, guides, templates, marketing materials and other similar information all constitute speech. *See, e.g.*, *IMS Health Inc. v. Sorrell*, 630 F.3d 263, 271–72 (2d Cir. 2010) ("The First Amendment protects [e]ven dry information, devoid of advocacy, political relevance, or artistic expression . . . speech in a form that is sold for profit is entitled to First Amendment protection.") (internal quotations omitted), *aff'd*, 564 U.S. 552, 566, 570 (2011) ("[C]reation and dissemination of information are speech for First Amendment purposes.").

The Final Rule is a content-based restriction because it requires "enforcement authorities" (here, the ATF) to "examine the content of the message that is conveyed to determine whether" the speech should be restricted. *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984). Not all information accompanying a frame or receiver blank transforms an unregulated item into a firearm. Rather, the ATF Director "may" at his discretion consider some, all, or none of the available speech accompanying a frame or receiver blank to determine whether that frame or receiver blank is a firearm. Final Rule at 24,678. The Final Rule has caused Polymer80 to regulate its protected speech by deleting instructions from its website, *see* App. 006 (Kelley Decl., ¶ 115), chilling Polymer80's protected speech.

"Content based restrictions on protected First Amendment expression are presumptively unconstitutional and subject to strict scrutiny.'" *Tex. Entm't Ass'n, Inc. v. Hegar*, 10 F.4th 495, 509 (5th Cir. 2021). To pass strict scrutiny, Defendants must demonstrate that they have adopted the least restrictive means of achieving their goal. *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 510 (D.C. Cir. 2016) ("If a less restrictive alternative for achieving that interest exists, the government must use that alternative.") (internal quotation and citation omitted). Defendants fail to address this issue entirely in the Final Rule. They likely cannot meet their burden, and the Final Rule therefore likely violates the First Amendment.

ii.   **The Final Rule, Open Letter, and Polymer80 Letter regulate conduct protected by the Second Amendment in a way that is inconsistent with the Nation's historical tradition of firearm regulation.**

Before the ATF published the Final Rule and issued its Open Letter and Polymer80 Letter, the Supreme Court set forth the legal standard for reviewing a claim made under the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022) (citation and internal quotation marks omitted). *Bruen* rejected the use of means-end scrutiny, and, in doing so, made clear that the severity of a "burden" on protected activity is immaterial. *Id*. at 2117–18, 2126 (prohibiting courts from analyzing "the severity of the law's burden on that right").

Arms that are commonly possessed for lawful purposes, such as self-built handguns and long guns, are protected by the Second Amendment. *See Heller v. District of Columbia*, 554 U.S. 570, 625 (2008). Parts used to create protected arms, like parts kits and frame and receiver blanks, are likewise protected by the Second Amendment because "[c]onstitutional rights thus implicitly protect those closely related acts necessary to their exercise. . . . Without protection for these closely related rights, the Second Amendment would be toothless." *See, e.g.*, *Luis v. United States*, 578 U.S. 5, 26–27 (2016) (Thomas, J., concurring). Firearm parts are just as protected as the firearms themselves, *id*., the ammunition used to shoot them, *Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014), and the shooting ranges to acquire proficiency in their use, *Ezell v. Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). Because possession of these items is protected, the sale of them is also protected. *See, e.g.*, *Maryland Shall Issue, Inc. v. Hogan*, 971

16

F.3d 199, 214 (4th Cir. 2020), as amended (Aug. 31, 2020) (recognizing the right to sell protected arms).

Self-building firearms is a tradition that pre-dates the Founding of the United States.[7] "Privately made firearms have been in existence since the first ignition system was developed close to 500 years ago, in the 1400s." *Stop Gun Violence*, at 4 (testimony of Ashley Hlebinsky). Thomas Jefferson in 1793 recognized the history and tradition supporting the right to make firearms, writing that "[o]ur citizens have always been free to make, vend, and export arms." THOMAS JEFFERSON, 3 WRITINGS 558 (H.A. Washington ed., 1853).[8] "Americans continued producing their own arms in the nineteenth and twentieth centuries." *American Tradition of Self-Made Arms*, at 36–37 ("[T]he tradition of building arms for personal use is deeply rooted in American history, and [] there is no tradition of regulating self-built arms."). Individuals self-building firearms for personal, lawful uses is a tradition steeped in our natural right to self-defense.

There is no tradition of banning or regulating the possession or sale of firearm parts, like kits parts and frame and receiver blanks, that are used to build a handgun or long gun. "Regulations on self-built arms are not longstanding. In fact, there were no restrictions on the manufacture of arms for personal use in America during the seventeenth, eighteenth, or nineteenth centuries." *Id.* at 78.

Defendants accordingly cannot meet their burden of demonstrating that the Final Rule, Open Letter, and Polymer80 Letter regulate protected conduct in a way that is consistent with the Nation's historical tradition of firearm regulation. The ATF shirked this analysis altogether in its

---

[7] During the Revolutionary War, "[t]o sustain themselves against a large and well-supplied British military throughout the eight-year war, the Americans relied on gunsmiths, individuals with knowhow from working on their own arms, and Americans who were willing to learn the art of arms manufacturing." Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms*, 54 ST. MARY'S L.J. 35, 51 (Apr. 11, 2022), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3960566.

[8] *Available at* https://founders.archives.gov/documents/Jefferson/01-26-02-0031 (last visited **).

Final Rule, claiming that "this final rule [does not violate the Second Amendment]" because it serves "compelling governmental interests" while "impos[ing] a minimal burden on the possession of firearms." Final Rule at 24,676–77. Not only does this analysis fail to demonstrate that the Final Rule is consistent with the Nation's historical tradition of firearm regulation, it employs the two-step test expressly rejected by *Bruen*. Defendants likely cannot meet their burden required by *Bruen*, and the Final Rule, Open Letter, and Polymer80 Letter therefore likely violate the Second Amendment.

> **iii.** **The Final Rule, Open Letter, and Polymer80 Letter effectuate a regulatory taking without just compensation, and the Final Letter's definitions of "frame or receiver," "readily," and "firearm" are unconstitutionally vague.**

The Final Rule and, through its implementation, the Open Letter and Polymer80 Letter, effectuate a regulatory taking without just compensation. The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. "While it confirms the State's authority to confiscate private property, the text of the Fifth Amendment imposes [a] condition[] on the exercise of such authority: . . . 'just compensation' must be paid to the owner." *Brown v. Legal Found. of Washington*, 538 U.S. 216, 231–32 (2003).

Frame and receiver blanks are personal property and therefore come within the Takings Clause's protections. *See Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2425–26 (2015). Personal property, like frame and receiver blanks, can be "taken" within the meaning of the Fifth Amendment in one of two ways. A "physical taking" occurs when the government appropriates or otherwise physically dispossesses an owner of his property. *Lingle v. Chevron USA, Inc*., 544 U.S. 528, 537 (2005). A "regulatory taking" occurs when "government regulation of private property [is] so onerous that its effect is tantamount to a direct appropriation or ouster." *Id.*

18

The Final Rule requires federal firearms licensees with "privately made firearms" in their inventories to either mark them according to the Final Rule's specifications, destroy them, or "voluntarily" turn them over to a law enforcement agency. Polymer80 is a federal firearms licensee, *see* App. 002 (Kelley Decl., ¶ 4), and the Open Letter and Polymer80 Letters make clear that Polymer80's frame and receiver blanks are firearms, App. 004–005 (*Id.*, at ¶¶ 11, 13). The Final Rule does not provide compensation to licensees. The Final Rule's regulations on "privately made firearms" effectuate a regulatory taking of personal property without just compensation, rendering such provisions a violation of the Fifth Amendment's Takings Clause.

The Final Rule, Open Letter, and Polymer80 Letter are also unconstitutionally vague. "A law is unconstitutionally vague if people of common intelligence must guess at its meaning and differ as to its application." *Shamloo v. Miss. State Bd. of Trustees of Insts. of Higher Learning*, 620 F.2d 516, 523 (5th Cir. 1980); *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (indicating that the void for vagueness doctrine applies to agency regulations). A law must provide "'fair notice' of the conduct a statute proscribes," to "guard[] against arbitrary or discriminatory law enforcement." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018).

Due process and vagueness concerns are at their highest in this case because a violation of the Gun Control Act bears criminal consequences, *see United States v. Davis*, 139 S. Ct. 2319, 2323 (2019) ("Only the people's elected representatives in Congress have the power to write new federal criminal laws."); 18 U.S.C. § 924(a)(1)(D) (imposing up to five years in prison and criminal fines for willful violations), and because the Final Rule, Open Letter, and Polymer80 Letter "threaten[] to inhibit the exercise of constitutionally protected rights," further heightening the due process and vagueness concerns, *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982).

The Final Rule, Open Letter, and Polymer80 Letter are fatally vague in three respects. First, the Final Rule does not plainly indicate when or how an unregulated item becomes a frame or receiver and thus a firearm. The Final Rule's definition of "firearm" is so indefinite that ATF had to "expressly exclude[] . . . unformed blocks of metal, liquid polymers, and other raw materials" "from the definition of 'frame or receiver.'" Final Rule, at 24,700. The definition of "frame or receiver" further creates uncertainty by giving the Defendants nearly unbridled discretion to consider (or not consider) various factors, leaving Polymer80 guessing at what the Final Rule regulates and how it does so. *See, e.g.*, Final Rule, at 24,739 ("When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit."); *id*. at 24,735 ("readily" is described as "[a] process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state").

Second, the eight-factor definition of "readily" is unconstitutionally vague. The Final Rule defines a firearm to "include a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." Final Rule, at 24,735. Readily is defined as "[a] process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state." Final Rule, at 24,735. The Final rule uses an amorphous eight-factor test to guide the analysis of when something may readily become a firearm:

    (1) Time, i.e., how long it takes to finish the process;
    (2) Ease, i.e., how difficult it is to do so;
    (3) Expertise, i.e., what knowledge and skills are required;
    (4) Equipment, i.e., what tools are required;
    (5) Parts availability, i.e., whether additional parts are required and how easily they
       can be obtained;

(6) Expense, i.e., how much it costs;

(7) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and

(8) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction.

*Id.*

These eight factors do not provide an ascertainable standard to a person of common intelligence. Each factor is subject to an impermissible "open-ended interpretation." *See Timpinaro v. SEC*, 2 F.3d 453, 460 (D.C. Cir. 1993) (suggesting that a seven-factor test put forth by the SEC was unconstitutionally vague). The Open Letter and Polymer80 Letter do not even consider all eight factors. *See* App. 108–117 (not considering factor 7); App. 119–128 (same). Further, the Director can weigh (or, apparently, not weigh) each factor in an indeterminate way.

Third, the definition of "complete weapon" does not establish a knowable and enforceable regulation. The Final Rule defines "complete weapon" as "[a] firearm other than a muffler or silencer that contains all component parts necessary to function, whether or not assembled or operable." Final Rule, at 24,747. By including unassembled weapons in "complete weapon" the ATF created enforcement uncertainty because many gun parts are interchangeable. *See* App. 005 (Kelley Decl., ¶ 13 (providing examples)).

## II. There is a substantial threat that the Final Rule, Open Letter, and Polymer80 Letter will irreparably harm Polymer80 and its customers by forcing Polymer80 to comply with an unlawful regulation and threatening to put Polymer80 out of business.

A movant demonstrates a substantial threat of irreparable harm in two possible ways. First, "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *VanDerStok I*, 2022 WL 4009048, at *9 (quoting *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016)). Second, "where the potential economic loss is so great as to threaten the existence of the movant's business." *Id.* (quoting *Atwood Turnkey Drilling, Inc. v.*

*Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989)). Polymer80 faces a substantial threat of both harms.

First, the Final Rule, Open Letter, and Polymer80 Letter impose nonrecoverable compliance costs on Polymer80. *See* App. 005 (Kelley Decl., ¶ 14). Compliance costs are nonrecoverable "because federal agencies generally enjoy sovereign immunity for any monetary damages." *VanDerStok I*, 2022 WL 4009048, at *9 (quoting *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021)). "And nonrecoverable means irreparable." *Id*.

The Final Rule, Open Letter, and Polymer80 Letter do more than impose compliance costs, they threaten to put Polymer80 out of business subsequent to the issuance of the Final Rule, Polymer80 sold receiver blanks without jigs, which it believed to be legal under the Final Rule. *See* App. 005 (Kelley Decl., ¶ 14). The Open Letter and Polymer80 Letter, however, prohibit Polymer80 from engaging in even that practice. The Final Rule, Open Letter, and Polymer80 Letter impose nonrecoverable compliance costs on Polymer80. *See* App. 005 (Kelley Decl., ¶ 14). Polymer80's business model and continued existence depend on sales of parts kits and frame and receiver blanks that have long been held and understood not to be "firearms" under federal law, but the Final Rule, Open Letter, and Polymer80 Letter have forced Polymer80 to discontinue sales of unfinished-frame kits and unfinished frames as they are currently designed. *See* App. 005–006 (Kelley Decl., ¶ 15). The Final Rule, in conjunction with the Open Letter and the Polymer80 Letter, have caused profound economic harm to Polymer80 and threaten its very existence as a going concern. *See* App. 006 (Kelley Decl., ¶ 16). The ATF is well-aware of the impacts of its policies, having estimated that "the majority of affected entities are small entities that would experience a range of costs, the largest cost being the dissolution of the entire business." ATF, *Regulatory*

*Impact Analysis and Final Regulatory Flexibility Analysis* 124 (Apr. 2022).[9] Polymer80 will likely suffer irreparable harm if Defendants are not enjoined from enforcing the Final Rule, Open Letter, and Polymer80 Letter. App. 006 (Kelley Decl., ¶ 16).

Polymer80's customers will also suffer irreparable harm from the Final Rule, Open Letter, and Polymer80 Letter, just as Tactical's, BlackHawk's, and Defense Distributed's customers suffered irreparable harm from the Final Letter. *See VanDerStok III*, 2022 WL 4809376, at *8–9; *VanDerStok IV*, 2022 WL 16680915, at *5; *VanDerStok V*, 2023 WL 2347438 at *3, 5. Polymer80 sells its products directly to other businesses. *See* App. 002–003 (Kelley Decl., ¶ 4). Its customers include both those business and the individuals to whom those businesses sell Polymer80 products. *Id.* These customers—business or individuals—suffer a "fear of felony indictment for violating the Final Rule," *VanDerStok III*, 2022 WL 4809376, at *8; *see also* App. 005 (Kelley Aff., ¶ 13), which constitutes irreparable harm, *VanDerStok III*, 2022 WL 4809376, at *8.

## III. The balance of equities and public interest favor enjoining the Final Rule, Open Letter, and Polymer80 Letter for the same reasons this Court enjoined the Final rule as to manufacturers like Polymer80.

Polymer80's and its customers' injuries far outweigh any potential harm to Defendants or the public interest. Defendants face no harm from the temporary relief sought by Polymer80. This Court has already held:

> [A]ny injury to the Government's general interest in law enforcement and public safety is appreciably undermined by the Court's preliminary determination that the Final Rule is likely unlawful. Once again, this reasoning is strengthened by the fact that the Government's likely *ultra vires* enforcement efforts upset decades of ATF regulatory precedent against a public that has relied on that historic posture.

*VanDerStok V*, 2023 WL 2347438 (incorporating analysis from previous orders). Moreover:

> [T]he liberty interests of law-abiding citizens wishing to engage in historically lawful conduct (dealing in now-regulated parts) . . . outweighs the Government's

---

[9] *Available at* https://www.atf.gov/firearms/docs/rulemaking/ria-final-rule-2021r-05f-definition-frame-or-receiver-and-identification/download.

competing interest in preventing prohibited persons from unlawfully possessing firearms.

*Id*. And "the public's interest in having governmental agencies abide by the federal laws that govern their existence and operations weighs in favor of an injunction." *Id*. (internal quotation omitted).

Even if Defendants had a legitimate interest in implementing the Final Rule, they and the public face no substantial prejudice from suspended implementation. The government's interest "can be effectively vindicated after a trial on the merits," *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), whereas Polymer80's interest cannot be vindicated at trial because the Final Rule, Open Letter, and Final Letter will destroy its business long before any trial.

The Final Rule, Open Letter, and Polymer80 Letter put Polymer80 and its customers at risk of criminal penalties for the production, sale, and purchase of items that have not historically been considered firearms prior to the Final Rule. This regulatory risk extends to the sharing of technical instructions by Polymer80, who has been compelled to self-censor and refrain from free discourse with its customers because of the uncertainty created by the Final Rule. *See* App. 006 (Kelley Decl., ¶ 15).

The public interest in preserving full access to and enjoyment of the guarantees of Polymer80's and its customers' constitutional rights weighs in favor of enjoining enforcement of the unlawful Final Rule, Open Letter, and Polymer80 Rule for the pendency of this litigation. *U.S. Navy SEALs 1–26 v. Biden*, 578 F. Supp. 3d 822, 840 (N.D. Tex. 2022) ("An injunction does not disserve the public interest when it prevents constitutional deprivations.").

24

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter a temporary restraining order and preliminary injunction, restraining and enjoining Defendants' enforcement of the Final Rule, Open Letter, and Polymer80 Letter against Polymer80 and its customers.

Respectfully submitted,

By: */s/ Dennis L. Daniels Jr.*
     DENNIS L. DANIELS JR.
     Texas Bar No. 24107402
     dldaniels@bradley.com
3600 Fountain Place
1445 Ross Avenue
Dallas, Texas 75202
Telephone (214) 257-9800
Facsimile (214) 939-8787

JAMES W. PORTER, III (*pro hac vice*)
jporter@bradley.com
MARC A. NARDONE (*pro hac vice*)
mnardone@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street NW
Suite 1350
Washington, D.C. 20036
Telephone (202) 393-7150
Facsimile (202) 347-1684

**ATTORNEYS FOR POLYMER80, INC.**

**CERTIFICATE OF SERVICE**

I certify that on March 7, 2023, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the registered CM/ECF users in this action.

*/s/ Dennis L. Daniels Jr.*
Dennis L. Daniels Jr.