# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

POLYMER80, INC.,

     Plaintiff,

  v.

MERRICK GARLAND, in his official capacity as Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,

     Defendants.

Case No. 4:23-cv-00029-O

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................2

    I.      Statutory Background ...................................................................................2

    II.     Regulatory Background ................................................................................3

    III.    The Rule ......................................................................................................3

           A.      Definition of "Firearm" ..................................................................3

           B.      Definition of "Frame or Receiver" .................................................4

           C.      Definition of "Privately Made Firearm" .........................................5

    IV.    ATF's Letters ...............................................................................................6

    V.     Procedural Background .................................................................................7

LEGAL STANDARD ..................................................................................................................7

ARGUMENT ...............................................................................................................................8

    I.      Plaintiff Is Not Likely to Prevail on Its Claims .........................................8

           A.      This Court Cannot and Should Not Issue Injunctive Relief Because this District Is an Improper and Inappropriate Venue .......................8

                    1.      The Court must address Defendants' venue objection before considering Plaintiff's motion for preliminary injunctive relief ...........8

                    2.      Venue Is Improper in this District .......................................................10

                    3.      Alternatively, the Court should transfer the case to the District of Nevada under 28 U.S.C. § 1404 .........................................11

           B.      Plaintiff Is Unlikely to Succeed on the Merits of Its Claims ...........12

                      1.      Plaintiff is unlikely to succeed on their claim that the Rule, Open Letter, or Polymer80 Letter exceed statutory authority ...........12

                              a.      ATF acted within statutory authority in defining "frame or receiver" ......................................................................12

                            b.      ATF acted within statutory authority in defining firearm to include certain weapon parts kits ...........................14

i

2.      Plaintiff is unlikely to succeed on its claim that the Rule
        violates the First Amendment ..............................................................16

3.      Plaintiff is unlikely to succeed on its claim that the Rule
        violates the Second Amendment ...........................................................18

4.      Plaintiff is unlikely to succeed on its claim that the Rule,
        Open Letter, and Polymer80 Letter effectuate a taking or are
        unconstitutionally vague ........................................................................19

II.    Plaintiff Fails to Establish Imminent Irreparable Harm ...............................................22

A.      Plaintiff's Delay in Seeking Emergency Relief Weighs Against a
        Finding that They Will Suffer Irreparable Harm Absent Such Relief ............22

B.      Plaintiff Fails to Substantiate a Cognizable Imminent Threat of
        Irreparable Injury ...................................................................................23

III.   The Balance of Equities and Public Interest Make Injunctive Relief
       Inappropriate ..............................................................................................................24

CONCLUSION ...................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Al Hada v. Pompeo,*
  Case No. CV188002DMGJPRX, 2018 WL 6264999 (C.D. Cal. Sept. 17, 2018)................................8

*Am. Acad. of Implant Dentistry v. Parker,*
  860 F.3d 300 (5th Cir. 2017) ..............................................................................................16

*Andritz Sundwig GmbH v. United States,*
  Case No. CV 4:18-2061, 2018 WL 3218006 (S.D. Tex. July 2, 2018)....................................24

*Anyadike v. Vernon Coll.,*
  Case No. 7:15-cv-00157-O, 2015 WL 12964684 (N.D. Tex. Nov. 20, 2015) .....................22

*Arcaca v. Cloud Books, Inc.,*
  478 U.S. 697 (1986) ...........................................................................................................17

*Armstrong Pump, Inc. v. Hartman,*
  Case No. 10-CV-446S, 2010 WL 3547754 (W.D.N.Y. Sept. 10, 2010) ................................9

*Atwood Turnkey Drilling, Inc. v. Petroleo Brasiliero, S.A.,*
  875 F.2d 1174 (5th Cir. 1989) ............................................................................................24

*Budd Co. v. U.S. Dep't of Transp.,*
  89 F.R.D. 555 (E.D. Pa. 1981)..............................................................................................9

*Camreta v. Greene,*
  563 U.S. 692 (2011) ...........................................................................................................12

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
  447 U.S. 557 (1980) ......................................................................................................16, 17

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
  142 S. Ct. 1464 (2022) .......................................................................................................17

*Deepwell Energy Servs., LLC v. Sims,*
  Case No. 2:18-CV-53-KS-MTP, 2018 WL 9963839 (S.D. Miss. July 16, 2018)....................9

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ...........................................................................................................18

*Div. 80, LLC v. Garland,*
  Case No. 3:22-CV-148, 2022 WL 3648454 (S.D. Tex. Aug. 23, 2022)...........................12, 23, 24, 25

*Farmland Dairies v. McGuire*,
   771 F. Supp. 80 (S.D.N.Y. 1991) ............................................................................11

*First Sec. Bank v. W & W Farms, Inc.*,
   Case No. 2:19-cv-91-Z, 2020 WL 570814 (N.D. Tex. Feb. 4, 2020) .......................8

*Glazier Grp., Inc. v. Mandalay Corp.*,
   Case No. CIV.A. H-06-2752, 2007 WL 2021762 (S.D. Tex. July 11, 2007) ............9

*Grandinetti v. Mandarino*,
   Case No. CIV. 13-00709 SOM, 2013 WL 6815091 (D. Haw. Dec. 24, 2013) ..........10

*Half Price Books, Recs., Mags., Inc. v. Riepe*,
   Case No. CIV.A.3:98-CV-0585-P, 1998 WL 329383 (N.D. Tex. June 12, 1998) ......9

*Hendricks v. Bank of Am., N.A.*,
   408 F.3d 1127 (9th Cir. 2005) ............................................................................1, 8

*Hill v. Colorado*,
   530 U.S. 703 (2000) ...............................................................................................21

*Jones v. City of Buffalo*,
   901 F. Supp. 19 (D.D.C. 1995), *aff'd*, No. 95-7273,
   1996 WL 174352 (D.C. Cir. Mar. 12, 1996) ...........................................................10

*La Union Del Pueblo Entero v. FEMA*,
   608 F.3d 217 (5th Cir. 2010) ...................................................................................8

*Larson v. Galliher*,
   Case No. 2:06 cv 1471 RCJ GWF, 2007 WL 81930 (D. Nev. Jan. 5, 2007) ...........8

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
   Case No. 3:17-cv-3200-N, 2019 WL 7882552 (N.D. Tex. Sept. 18, 2019) ............22

*Lingle v. Chevron U.S.A. Inc.*,
   544 U.S. 528 (2005) ...............................................................................................19

*Magnetic Prod., Inc. v. Trestain*,
   Case No. CIV. 06-10443, 2006 WL 1109250 (E.D. Mich. Apr. 24, 2006) ...............9

*Maybelline Co. v. Noxell Corp.*,
   813 F.2d 901 (8th Cir. 1987) ....................................................................................9

*McCain v. Bank of Am.*,
   13 F. Supp. 3d 45, 50 (D.D.C. 2014),
   *aff'd sub nom. McCain v. Bank of Am. N.A.*, 602 F. App'x 836 (D.C. Cir. 2015) .................10

iv

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ........................................................................................................18

*Morehouse Enters. v. ATF*,
   Case No. 3:22-CV-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022),
   *appeal docketed, Arizona v. ATF,* No. 22-2812 (8th Cir.) ...................................... 12, 14, 16, 25

*Munaf v. Geren*,
   553 U.S. 674 (2008) ..........................................................................................................7

*Munn v. City of Ocean Springs*,
   763 F.3d 437 (5th Cir. 2014) .....................................................................................19-20

*N.Y. State Rifle & Pistol Ass'n. v. Bruen*,
   142 S. Ct. 2111 (2022). ...............................................................................................18, 19

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015)............................................................................................20

*New York v. Burger*,
   482 U.S. 691 (1987) ........................................................................................................14

*Nken v. Holder*,
   556 U.S. 418 (2009) ..........................................................................................................8

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*,
   760 F.2d 312 (D.C. Cir. 1985) ..........................................................................................9

*Peoples Rts. Org., Inc. v. City of Columbus*,
   152 F.3d 522 (6th Cir. 1998) ...........................................................................................21

*Proctor & Gamble Co. v. Ranir, LLC*,
   Case No. 1:17-cv-185, 2017 WL 3537197 (S.D. Ohio Aug. 17, 2017) ........................ 1, 8, 9

*Protess v. Howell*, No. 95 C, 2553,
   1995 WL 270219 (N.D. Ill. May 5, 1995)......................................................................... 8, 10

*Pulse Techs., Inc. v. Dodrill*,
   Case No. CIV.A. 06-4549, 2006 WL 3589028 (E.D. Pa. Dec. 7, 2006) ...........................10

*Ruiz v. Jolicover*,
   Case No. CV 07-743-PHX-DGC, 2007 WL 1438669 (D. Ariz. May 15, 2007) ...............10

*Sierra Club v. Flowers*,
   276 F. Supp. 2d 62 (D.D.C. 2003)...................................................................................10

*Sig Sauer, Inc. v. Brandon,*
    826 F.3d 598 (1st Cir. 2016) ................................................................................5

*TeleSign Corp. v. Twilio Inc.,*
    Case No. CV 15-3240 PSG (SSX), 2015 WL 13861815 (C.D. Cal. Aug. 31, 2015)............................9

*Texas v. Biden,*
    10 F.4th 538 (5th Cir. 2021) ...............................................................................24

*Texas v. U.S. EPA,*
    829 F.3d 405 (5th Cir. 2016) ...............................................................................24

*United States v. 16,179 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns,*
    443 F.2d 463 (2d Cir. 1971)...............................................................................21

*United States v. Annis,*
    446 F.3d 852 (8th Cir. 2006) ...............................................................................15

*United States v. Catanzaro,*
    368 F. Supp. 450 (D. Conn. 1973) ......................................................................21

*United States v. Clinical Leasing Serv., Inc.,*
    925 F.2d 120 (5th Cir. 1991) ...............................................................................22

*United States v. Drasen,*
    845 F.2d 731 (7th Cir. 1988) ...............................................................................20

*United States v. Kelly,*
    276 F. App'x 261 (4th Cir. 2007).........................................................................20

*United States v. Kent,*
    175 F.3d 870 (11th Cir. 1999) .............................................................................20

*United States v. M-K Specialties Model M-14 Machinegun,*
    424 F. Supp. 2d 862 (N.D. W. Va. 2006) ...........................................................21

*United States v. Quiroz,*
    449 F.2d 583 (9th Cir. 1971) ...............................................................................21

*United States v. Ryles,*
    988 F.2d 13 (5th Cir. 1993) .................................................................................15

*United States v. Stewart,*
    451 F.3d 1071 (9th Cir. 2006) .............................................................................15

*United States v. Theodoropoulous,*
    866 F.2d 587 (3d Cir. 1989) ...............................................................................15

*United States v. Whalen,*
   337 F. Supp. 1012 (S.D.N.Y. 1972) ........................................................................................21

*United States v. Wick,*
   697 F. App'x 507 (9th Cir. 2017) ..........................................................................................15

*United States v. Wick,*
   Case No. CR 15-30-M-DLC, 2016 WL 10612608 (D. Mont. Mar. 11, 2016) ...................21

*United States v. Williams,*
   553 U.S. 285 (2008) ..............................................................................................................19

*VanDerStok v. Garland,*
   Case No. 4:23-cv-00691-O, 2022 WL 6081194 (N.D. Tex. Sept. 26, 2022) ............*passim*

*Vill. of Hoffman Ests. v. The Flipside,*
   455 U.S. 489 (1982) ..............................................................................................................22

*Wages & White Lion Invs., LLC v. FDA,*
   16 F.4th 1130 (5th Cir. 2021) ...............................................................................................24

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) ..............................................................................................................21

**Constitution**

U.S. Const. amend. II ...............................................................................................................18, 19

**Statutes**

18 U.S.C. § 921 *et seq*. ................................................................................................................*passim*

18 U.S.C. § 922 .........................................................................................................................2, 25

18 U.S.C. § 923 ...............................................................................................................................2

26 U.S.C. § 5845 ......................................................................................................................13, 20

26 U.S.C. § 5861 ...........................................................................................................................20

28 U.S.C. § 1391 ...........................................................................................................................10

28 U.S.C. § 1404 .........................................................................................................................7, 11

28 U.S.C. § 1406 ..........................................................................................................................7, 9

**Rules**

Fed. R. Civ. P. 12 ...................................................................................................................11

**Regulations**

27 C.F.R. § 478.11 ..............................................................................................3, 4, 20, 23

27 C.F.R. § 478.12 .................................................................................................... 6, 20

27 CFR §§ 478.92(a) ....................................................................................................21

27 C.F.R. § 479.11 .......................................................................................................21

27 C.F.R. § 479.102 .....................................................................................................21

28 C.F.R. § 0.130 ...........................................................................................................5

Commerce in Firearms and Ammunition,
    33 Fed. Reg. 18,555 (Dec. 14, 1968) ...................................................................3

Definition of "Frame or Receiver" and Identification of Firearms,
    86 Fed. Reg. 27,720 (May 21, 2021) ...........................................................3, 5, 20

Definition of "Frame or Receiver" and Identification of Firearms,
    87 Fed. Reg. 24,652 (Apr. 26, 2022)..................................................................*passim*

**Other Authorities**

https://www.atf.gov/firearms/docs/undefined/0123-ffl-list-nevadaxlsx/download.......................23

Omnibus Crime Control & Safe Streets Act of 1968,
    Pub. L. No. 90-351 § 901, 82 Stat. 197................................................................2

S. Rep. No. 88-1340 (1964) ......................................................................................15

## INTRODUCTION

Plaintiff Polymer80, Inc., a Nevada company suing federal agencies and officials in Washington, D.C. to challenge federal regulatory actions, is not entitled to a temporary restraining order or preliminary injunction from this Court.  Plaintiff is unlikely to succeed in its claims.  As Defendants have already explained in their brief in support of their Motion to Dismiss or Transfer Venue, ECF No. 13 ("Dismissal/Transfer Mem."), venue is improper in this Court, and convenience and interests of justice warrant transfer to the District of Nevada.  A court without proper venue "lack[s] authority to grant" preliminary relief, *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005), and courts have recognized that "it is <u>reversible error</u> to address injunctive relief prior to a claim of improper venue," *Proctor & Gamble Co. v. Ranir, LLC*, No. 1:17-cv-185, 2017 WL 3537197, at *4 (S.D. Ohio Aug. 17, 2017) (emphasis in original).  Plaintiff would also be unlikely to succeed on the merits of its claims in a proper venue.  The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") acted well within its statutory authority in defining firearms in the challenged rule, Final Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652, 24,652 (Apr. 26, 2022) (Rule), and challenged letters to include partially complete frames and receivers and weapon parts kits that can readily be completed to an operable state.  Plaintiff's flurry of constitutional objections to ATF's actions fare no better.

The other preliminary injunction factors do not support relief.  Plaintiff has not shown irreparable harm.  It can avoid the alleged harm to its business from discontinuing sales of certain products by selling those products in compliance with the Rule and the GCA, and Plaintiff fails to substantiate its alleged harm based on compliance costs.  The balance of equities also weighs against relief.  The significant public safety interest in preventing criminals from obtaining untraceable firearms far outweighs the burden to Plaintiff in complying with the GCA's requirements for firearms sales, such as serialization and background checks.  Plaintiff relies heavily on various rulings in another

case, *e.g.*, *VanDerStok v. Garland*, No. 4:23-cv-00691-O, 2022 WL 6081194 (N.D. Tex. Sept. 26, 2022), but those rulings are not binding here, and Defendants respectfully submit that they are mistaken in certain relevant respects.  The Court should deny preliminary injunctive relief.

## BACKGROUND

### I.   Statutory Background

Congress enacted the Gun Control Act of 1968, *as amended*, 18 U.S.C. § 921 *et seq.* (GCA), because "existing Federal controls over [firearms moving in interstate commerce] do not adequately enable the States to control this traffic. . . ."  Omnibus Crime Control & Safe Streets Act of 1968, Pub. L. No. 90-351 § 901(a)(1), 82 Stat. 197, 225.[1]  Congress determined that "only through adequate Federal control . . . over *all* persons engaging in the businesses of importing, manufacturing, or dealing in [these weapons], can this grave problem be properly dealt with."  *Id.* § 901(a)(3) (emphasis added). Accordingly, Congress enacted requirements for persons engaging in the business of importing, manufacturing, or dealing in "firearms."  *See generally* 18 U.S.C. §§ 922-923.

Congress defined "firearm" to include "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" and "the frame or receiver of any such weapon."  *Id.* § 921(a)(3).  However, Congress did not define the terms "frame" or "receiver." *See id.* § 921.  Congress requires individuals and entities that import, manufacture, or deal in firearms to obtain a federal firearms license, *id.* § 923(a), to maintain records of firearm acquisition and transfer as prescribed by regulation, *id.* § 923(g)(1)(A), and to conduct background checks before transferring firearms to a non-licensee, *id.* § 922(t).  Congress also requires licensed importers and manufacturers to identify each firearm they import or manufacture with a serial number on the receiver or frame of the weapon.  *Id.* § 923(i).  Congress has also vested in ATF the authority to prescribe regulations "necessary to carry out the provisions of" the GCA.  *Id.* § 926(a).

---

[1] Throughout this brief, internal alterations and citations are omitted from relevant citations.

## II.      Regulatory Background

ATF has promulgated regulations implementing the GCA.  *See* 27 C.F.R. parts 478-479.  Over fifty years ago, ATF defined the statutory term "frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion."  Final Rule, Commerce in Firearms and Ammunition, 33 Fed. Reg. 18,555, 18,558 (Dec. 14, 1968), *codified at* 27 C.F.R. § 478.11.  However, a restrictive application of this definition—as some courts have recently used—would not describe the frame or receiver of most current firearms.   Final Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652, 24,652 (Apr. 26, 2022) (Rule).

Furthermore, technological advances in the decades since the "frame or receiver" definition was adopted have made it easier to create firearm parts kits, standalone frame or receiver parts, and easy-to-complete frames or receivers.  *Id.*  Some individuals and companies have sold these items to unlicensed persons without being licensed themselves, maintaining any records, or conducting background checks.  *Id.*  These products allow unlicensed persons to make functional firearms quickly and easily.  *Id.*  Because such privately made firearms typically lack serial numbers, it is extremely difficult for law enforcement to trace them when used in a crime.  *Id.* at 24,652, 24,659.

## III.      The Rule

To update its decades-old definition of "frame or receiver," ATF published a notice of proposed rulemaking.  Proposed Rule, Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27,720 (May 21, 2021) (Notice).  ATF promulgated the final rule on April 26, 2022.  87 Fed. Reg. 24,652.  As relevant here, the Rule contains the following key provisions:

### A.      Definition of "Firearm"

Under the GCA and implementing regulations, a "firearm" includes "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the

action of an explosive." 18 U.S.C. § 921(a)(3)(A); 27 C.F.R. § 478.11. This definition thus includes currently inoperable weapons if they are "designed to" or "may readily be converted" to expel a projectile by the action of an explosive. *See* 87 Fed. Reg. at 24,661 nn.42-43. In recent years, weapon parts kits, or aggregations of weapon parts—some of which contain all components necessary to easily complete a functional weapon—have increasingly been sold to persons without background checks or recordkeeping. *Id.* at 24,662. Some of these firearm kits include jigs, templates, and tools that allow the purchaser to easily convert the weapon to a functional state. *Id.* Such weapon parts kits or aggregations of weapon parts that are *designed to* or *may readily be converted to* expel a projectile by the action of an explosive are "firearms" under the GCA and its regulations. *Id.* at 24,662 n.44.

To reflect existing case law, the Rule amends ATF's regulatory definition of "firearm," providing that "[t]he term shall include a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." *See id.* at 24,662, 24,727, 24,735.

**B.    Definition of "Frame or Receiver"**

The Rule provides an updated definition of the term "frame or receiver."[2] *See id.* at 24,652, 24,727. The Rule further defines "frame" for handguns, and "receiver" for rifles, shotguns, and other weapons that expel a projectile. *See id.* at 24,727, 24,735. Unlike the 1968 definition, these updated definitions now describe only a *single* housing or structural component for a *specific* fire control component of a given weapon—including "variants thereof," a term that is also defined. *Id.*

The definition of "frame or receiver" includes a frame or receiver that is partially complete, disassembled, or nonfunctional—including a frame or receiver parts kit—that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver.

---

[2] Previously, ATF regulations included definitions for both "firearm frame or receiver" and "frame or receiver." 87 Fed. Reg. at 24,727.

*Id.* at 24,739; *see also id.* at 24,663, 24,727-28.  However, the definitions of "frame" and "receiver" specifically exclude forgings, castings, printings, or similar articles that have not yet reached a stage of manufacture where they are clearly identifiable as unfinished component parts of weapons—*e.g.*, unformed blocks of metal and other raw materials.  *Id.* at 24,663, 24,728, 24,739.

To provide notice as to how ATF evaluates firearm parts kits when making firearm classifications,[3] the Rule states that in issuing classifications, ATF may consider any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold or otherwise made available with the item or kit.  87 Fed. Reg. at 24,724-25, 24,739.  To provide additional clarity, the Rule includes five non-exclusive examples illustrating the application of the "frame or receiver" definition to a "partially complete, disassembled, or nonfunctional frame or receiver."  *Id.* at 24,739.

The Rule also defines "[r]eadily" to mean a process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state.  *Id.* at 24,735.  With respect to ATF's classification of firearms, relevant factors to making this determination include: (1) time (2) ease, (3) expertise, (4) equipment (5) parts availability, (6) expense, (7) scope, and (8) feasibility.  *Id.*  This definition and factors are based on case law interpreting the terms "may readily be converted to expel a projectile" in the GCA and "can be readily restored to shoot" in the National Firearms Act (NFA).  86 Fed. Reg. at 27,663 & n.58.

## C.    Definition of "Privately Made Firearm"

To account for recent technological advances, the Rule clarifies that the GCA's definition of "firearm" includes a "privately made firearm."  87 Fed. Reg. at 24,735.  A "privately made firearm"

---

[3] Exercising its delegated authority to administer federal firearms laws, 28 C.F.R. § 0.130, ATF has provided both formal guidance (regulations) and informal guidance (classification determinations) as to what constitute "firearms."  Although a manufacturer or dealer is not legally required to seek an agency determination whether its product constitutes a "firearm" prior to the product's manufacture or sale, ATF provides such determinations to manufacturers or dealers who submit requests for classification.  *See Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 599 (1st Cir. 2016).

(PMF) is a firearm (including a frame or receiver) that is assembled or otherwise produced by a person other than a licensed manufacturer, and that does not contain a serial number placed by a licensed manufacturer at the time of production. *Id.* The Rule does not restrict the private making of firearms by non-licensees who are not otherwise prohibited by law from possessing them, and it requires only that such firearms that are taken into inventory by licensees be serialized and recorded so that they may be traced by law enforcement if they are later involved in crime. *Id.* at 24,653, 24,742, 24,744.

## IV.    ATF's Letters

On December 27, 2022, ATF issued an open letter to all federal firearms licensees informing them that ATF considered certain partially complete pistol frames, including some frames sold by Plaintiff, to be "frames" and therefore "firearms" under the GCA and the Rule.  Compl. Ex. A, Open Letter to All Federal Firearms Licensees (Dec. 27, 2022), ECF No. 1-2 ("Open Letter").  The Open Letter explained that some of Plaintiff's pistol frames included machining or indexing in the front and rear fire control cavities, which are critical areas because they provide housing for the sear, the component designed to hold back the hammer, striker, bolt, or similar primary energized component before the firing sequence is initiated.  *Id.* at 3-6.  These frames could be completed into a functional state "within minutes" "by a person with novice skill, using common tools, such as a Dremel-type rotary tool."  *Id.* at 6.  ATF concluded that these products "have reached a stage of manufacture" where "they are classified as a 'frame' and also a firearm' as defined in the GCA, 18 U.S.C. § 921(a)(3)(B), and implementing regulations, 27 CFR 478.12(a)(1), (c)."  *Id.* at 9 (emphasis omitted). Also on December 27, 2022, ATF sent a letter addressed to Plaintiff at its headquarters in Dayton, Nevada, containing a similar analysis to the Open Letter and likewise concluding that some of Plaintiff's partially complete frames qualified as frames and firearms under the GCA and the Rule.  *See* Compl. Ex. D, Letter from Daniel Hoffman to Loran Kelley (Dec. 27, 2022), ECF No. 1-5 (the "Polymer80 Letter").

## V.        Procedural Background

Plaintiff filed its Complaint on January 9, 2023.  *See generally* Compl.  Plaintiff is a Nevada corporation with its principal place of business in Dayton, Nevada.  Compl. ¶ 18, ECF No. 1; Compl. Ex. E, Declaration of Loran L. Kelley Jr. ¶ 4, ECF No. 1-6 ("Kelley Decl.").  Plaintiff filed this lawsuit against DOJ, ATF, and the leaders of those agencies in their official capacity (Attorney General Merrick Garland and ATF Director Steven Dettelbach).  *Id.* ¶¶ 19-22.  Plaintiff manufactures and sells, among other things, products that its customers can use to make complete firearms.  *Id.* ¶ 2.  Plaintiff asserts seventeen causes of action, claiming that the Rule, the Open Letter, and the Polymer80 Letter are unlawful for a variety of reasons, including that they exceed ATF's statutory authority, violate various provisions of the Constitution, and were promulgated in violation of the Administrative Procedure Act (APA).  *See generally id.* ¶¶ 125-235.

On March 7, 2023, Defendants filed a motion (the "Dismissal/Transfer Motion") asking the Court to dismiss the Complaint for improper venue pursuant to Federal Rule 12(b)(3) (noting that under 28 U.S.C. § 1406(a), the Court had discretion to address improper venue by transferring the case to a district with proper venue, such as the District of Nevada or District of the District of Columbia), or, in the alternative, to transfer the case to the District of Nevada pursuant to 28 U.S.C. § 1404(a).  *See* ECF No. 12 (motion); ECF No. 13 (memorandum in support).  That motion is pending. Later that day, Plaintiff filed this motion for a Temporary Restraining Order and Preliminary Injunction ("TRO/PI Motion").  *See* ECF No. 14 (motion); ECF No. 15 (memorandum in support).

## LEGAL STANDARD

"A preliminary injunction is an 'extraordinary and drastic remedy,'" *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted), that "should only issue if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the

injunction is granted; and (4) the injunction will not disserve the public interest," *La Union Del Pueblo Entero v. FEMA*, 608 F.3d 217, 219 (5th Cir. 2010). The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "The standard for a temporary restraining order ('TRO') is generally the same as the standard for a preliminary injunction" and requires satisfaction of the same four factors. *First Sec. Bank v. W & W Farms, Inc.*, No. 2:19-cv-91-Z, 2020 WL 570814, at *4 (N.D. Tex. Feb. 4, 2020).

## ARGUMENT

## I.    Plaintiff Is Not Likely to Prevail on Its Claims

### A.    This Court Cannot and Should Not Issue Injunctive Relief Because this District Is an Improper and Inappropriate Venue

1.    *The Court must address Defendants' venue objection before considering Plaintiff's motion for preliminary injunctive relief*

A court lacks "the power to issue a preliminary injunction before taking action on a motion alleging improper venue." *Ranir*, 2017 WL 3537197, at *4. A venue defense "bear[s] on the district court's power to issue the injunction because the court would lack authority to grant relief if . . . venue was improper . . ." *Hendricks.*, 408 F.3d at 1135.[4]

Therefore, "[c]ourts faced with an argument that venue is <u>improper</u> must resolve that issue prior to addressing the merits of any claim, including a preliminary injunction." *Ranir*, 2017 WL 3537197, at *4 (emphasis in original); *Hendricks*, 408 F.3d at 1135 (where a venue defense is "properly raised, . . . because [it] attack[s] the district court's authority to grant relief, the district court ha[s] to consider the defense[] as 'a logical predicate to' its preliminary injunction order").[5] In fact, courts have

---

[4] *See also Al Hada v. Pompeo*, No. CV188002DMGJPRX, 2018 WL 6264999, at *1 (C.D. Cal. Sept. 17, 2018) ("A district court lacks authority to grant preliminary injunctive . . . relief if venue is improper."); *Protess v. Howell*, No. 95 C 2553, 1995 WL 270219, at *2 (N.D. Ill. May 5, 1995) ("It is axiomatic that in order for a case to be properly before a federal district court, . . . venue must be proper.").

[5] *See also Larson v. Galliher*, No. 2:06 cv 1471 RCJ GWF, 2007 WL 81930, at *1 (D. Nev. Jan. 5, 2007) ("Before reaching the merits of the . . . request for injunctive relief, the Court must decide the

recognized that "it is <u>reversible error</u> to address injunctive relief prior to a claim of improper venue." *Ranir*, 2017 WL 3537197, at *4 (emphasis in original).[6]

When faced with a motion for preliminary injunctive relief (either a preliminary injunction or a temporary restraining order) and a motion to dismiss or transfer for improper venue, the typical and appropriate practice of district courts (including district courts within this Circuit) is to consider the venue objection, and if the court finds that venue is improper, either dismiss or transfer the action and deny the motion for preliminary relief as moot. *See, e.g., Half Price Books, Recs., Mags., Inc. v. Riepe*, No. CIV.A.3:98-CV-0585-P, 1998 WL 329383, at *7 (N.D. Tex. June 12, 1998) (granting motion to transfer venue and denying without prejudice request to set preliminary injunction hearing); *Glazier Grp., Inc. v. Mandalay Corp.*, No. CIV.A. H-06-2752, 2007 WL 2021762, at *1 (S.D. Tex. July 11, 2007) (granting motion to transfer case under 28 U.S.C. § 1406 and declining to resolve motion for preliminary injunction); *Deepwell Energy Servs., LLC v. Sims*, No. 2:18-CV-53-KS-MTP, 2018 WL 9963839, at *4 (S.D. Miss. July 16, 2018) (dismissing for improper venue and denying motion for

---

threshold issue if . . . venue is appropriate in this matter."); *Magnetic Prod., Inc. v. Trestain*, No. CIV. 06-10443, 2006 WL 1109250, at *2 (E.D. Mich. Apr. 24, 2006) ("The Court need not consider MPI's motion for a preliminary injunction, as this action must be dismissed for lack of venue."); *Armstrong Pump, Inc. v. Hartman*, No. 10-CV-446S, 2010 WL 3547754, at *3 (W.D.N.Y. Sept. 10, 2010) ("Prior to considering Armstrong's request for injunctive relief, the Court must determine . . . whether dismissal for improper venue is warranted."); *Budd Co. v. U.S. Dep't of Transp.*, 89 F.R.D. 555, 556 (E.D. Pa. 1981) (court "must address and decide" a "motion to dismiss or transfer this action due to improper venue" "[b]efore this court can consider . . . [plaintiff's] motion for preliminary injunction); *TeleSign Corp. v. Twilio Inc.*, No. CV 15-3240 PSG (SSX), 2015 WL 13861815, at *1 (C.D. Cal. Aug. 31, 2015) ("a preliminary injunction should not be granted or denied if venue is improper").

[6] *See also Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 907 (8th Cir. 1987) (reversing preliminary injunction because the "district court erred in failing to grant . . . motion to dismiss or transfer for improper venue"); *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 760 F.2d 312, 317 (D.C. Cir. 1985) (vacating preliminary injunction and remanding to district court "with instructions to dismiss the action because venue has been laid in the wrong district").

preliminary injunction as moot).[7]  This Court lacks authority to issue any injunctive relief unless and until it finds that venue is proper.

    2.    *Venue Is Improper in this District*

Defendants incorporate their arguments in its Memorandum in Support of the Dismissal/Transfer Motion ("Dismissal/Transfer Mem."), ECF No. 13, that venue is improper in this district.  *See* Dismissal/Transfer Mem. 1, 4-8.  Tellingly, the entirety of Plaintiff's TRO/PI papers make no mention of this district, any events occurring in this district, or any property situated in this district, which only confirms that Plaintiff has failed to show that "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(e)(1)(B).

The cases cited by Plaintiff in support of venue in its opposition to Defendants' expedition motion, ECF No. 20, at 1-2, are inapposite and only highlight the kind of allegations supporting venue that are lacking here.  In *Sierra Club v. Flowers*, 276 F. Supp.2d 62 (D.D.C. 2003), the court granted the government's motion to transfer the case to the Southern District of Florida in a challenge filed by the Sierra Club challenging mining permits in wetlands located in Southern Florida.  *Id.* at 63.  All parties *conceded* that venue was proper in the Southern District of Florida, *id.* at 66 n.1, given that "much of the decision-making process occurred in federal agency offices in Florida," and "the entire Everglades ecosystem, including the Lake Belt area in which the mining is to occur, is situated in Florida."  *Id.* at 66.  Here, Plaintiff does not allege that the government's decision-making process occurred in this district or that the challenged actions focused on land located in this district.  Likewise,

---

[7] *See also Protess*, 1995 WL 270219, at *1; *Pulse Techs., Inc. v. Dodrill*, No. CIV.A. 06-4549, 2006 WL 3589028, at *6 (E.D. Pa. Dec. 7, 2006); *Jones v. City of Buffalo*, 901 F. Supp. 19, 22 (D.D.C. 1995), *aff'd*, No. 95-7273, 1996 WL 174352 (D.C. Cir. Mar. 12, 1996); *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 50 (D.D.C. 2014), *aff'd sub nom. McCain v. Bank of Am. N.A.*, 602 F. App'x 836 (D.C. Cir. 2015); *Grandinetti v. Mandarino*, No. CIV. 13-00709 SOM, 2013 WL 6815091, at *1 (D. Haw. Dec. 24, 2013); *Ruiz v. Jolicover*, No. CV 07-743-PHX-DGC, 2007 WL 1438669, at *1 (D. Ariz. May 15, 2007).

*Farmland Dairies v. McGuire*, 771 F. Supp. 80 (S.D.N.Y. 1991), is inapposite.  In that case, a court in the Southern District of New York found venue proper because the plaintiff dairies challenged state regulations that imposed compensatory payments on milk distribution that "occur[red] primarily in this district."  *Id.* at 82 (percentage of relevant distribution occurring in the district ranged from 50% to 95%).  *Farmland Dairies* thus does not support venue based on a vague allegation that a plaintiff "distributes its products throughout the United States, including within this district."  Compl. ¶ 18.[8]

      3.      *Alternatively, the Court should transfer the case to the District of Nevada under 28 U.S.C. § 1404*

A court can transfer a case to a district with proper venue "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  For the reasons Defendants have already explained, even if the Court determines that venue in this district is proper, the convenience of the parties and the interest of justice favor transfer to the District of Nevada.  *See* Dismissal/Transfer Mem. 8-14.  All the private interest and public interest factors that courts use to consider transfer motions favor transfer to the District of Nevada or are neutral.  *Id.* at 8-13.  The interest of justice also favors transfer.  Nothing explains Plaintiff's decision to file this lawsuit in a far-flung venue with no meaningful connection to this dispute other than the desire to appear before the one judge who has issued preliminary relief in favor of plaintiffs challenging the Rule.  *Id.* at 14.  If the Court does not dismiss the case outright, it should expeditiously transfer the case to the District of Nevada, so that a proper and appropriate forum can hear Plaintiff's claims and Plaintiff's request for preliminary relief.

---

[8] Plaintiff also cited the fact that the Court in *VanDerStok* issued injunctive relief to Tactical Machining, LLC.  ECF No. 20, at 1.  But the propriety of venue was not at issue in *VanDerStok* because Defendants in that case never raised a venue defense, which is waivable.  *See* Fed. R. Civ. P. 12(h)(1).  Moreover, unlike in this case, in *VanDerStok*, two plaintiffs were residents in this district.

**B.     Plaintiff Is Unlikely to Succeed on the Merits of Its Claims**

Apart from the impropriety of this venue, Plaintiff is unlikely to succeed on the merits of any of its claims.  Before addressing each claim, Defendant notes as an initial matter that Plaintiff relies heavily on the argument that it is likely to succeed on the merits, and satisfy the other preliminary injunction factors, because of various orders in *VanDerStok*.  *See* TRO/PI Mot. 2-4; TRO/PI Mem. 2-4, 10-11, 13, 23-24.  The rulings in *VanDerStok*, which are currently on appeal to the Fifth Circuit, are not binding here.  *See Camreta v. Greene*, 563 U.S. 692, 709 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").  But more importantly, the Court should adopt the persuasive reasoning of other decisions denying preliminary relief to plaintiffs challenging the Rule.  *See Morehouse Enters. v. ATF*, No. 3:22-CV-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022), *appeal docketed, Arizona v. ATF,* No. 22-2812 (8th Cir.)[9]; *Div. 80, LLC v. Garland*, No. 3:22-CV-148, 2022 WL 3648454 (S.D. Tex. Aug. 23, 2022).  In any event, the *VanDerStok* rulings cited by Plaintiff address only the claim that the Rule exceeded ATF's statutory authority, not Plaintiff's constitutional claims or Plaintiff's claims that the Open Letter and Polymer80 Letter exceeded statutory authority.

        1.    *Plaintiff is unlikely to succeed on their claim that the Rule, Open Letter, or Polymer80 Letter exceed statutory authority*

            a.    *ATF acted within statutory authority in defining "frame or receiver"*

ATF acted within its authority in defining frames and receivers to include those that could readily be completed to an operable state.  "Frame or receiver" is a statutory term that Congress did not define, leaving the definition of that term to the discretion and expertise of ATF.  And ATF has enacted regulations defining the term "frame or receiver" since shortly after the enactment of the

---

[9] An Eighth Circuit panel denied appellants' motion for an injunction pending appeal, *Arizona*, No. 22-2854 (8th Cir. Oct. 4, 2022), after appellants argued that an injunction pending appeal was warranted because they were likely to succeed on the merits of their claims.  Emergency Motion for Injunction Pending Appeal 8-25, *Arizona*, No. 22-2854 (8th Cir. filed Sept. 7, 2022).

GCA in 1968 that are consistent with common and technical dictionary definitions. *See* 87 Fed. Reg. at 24,654 & n.7, 24,693, & n.118. Importantly for this Court's inquiry, even under the previous definition, an issue that ATF has regularly resolved in issuing classification decisions was determining *when* in the manufacturing process an item becomes a frame or receiver. *See* 87 Fed. Reg. at 24,685 & n.102. As the *VanDerStok* court noted, "[a]n incomplete receiver may still be a receiver within the meaning of the statute, depending on the degree of completeness." *VanDerStok*, 2022 WL 4009048, at *5. ATF reasonably determined that the requisite degree of completeness occurs when the partially complete frame or receiver, such as the handgun frames described in the Open Letter, can readily be completed to a functional state.

In *VanDerStok*, the Court concluded that the Rule's amended definition of "frame or receiver" likely exceeded ATF's statutory authority because it would "regulate a component as a 'frame or receiver' even after ATF determines that the component in question is *not a* frame or receiver." *Id.* at *5. But the Rule's amended definition treats a component as a frame or receiver only when ATF has determined that the component *is* a frame or receiver. For example, the Open Letter and Polymer80 Letter repeatedly characterize the partially complete frames at issue as "frames" and concludes that "these partially complete pistol frames are '**frames**' and also '**firearms**' as defined in the GCA." Open Letter at 1; *id.* at 9-10 (concluding that these "'partially complete' frames used to assemble semiautomatic striker-fired pistols have reached the stage of manufacture where they are classified as a '**frame**' or '**firearm**'"); *see also* Polymer80 Letter at 1. Nowhere in either letter does ATF determine that these products are not frames.

ATF's use of the term "readily" in the Rule's amended definition validly incorporates a term and concept that Congress has used repeatedly in federal firearms laws, both in the GCA and elsewhere. *See, e.g.,* 26 U.S.C. § 5845(b) (defining "machinegun" as "any weapon which shoots, is designed to shoot, or can *readily* be restored to shoot, automatically"). This definition of "frame or

13

receiver" ensures that the GCA and NFA (which was amended by the GCA to define machinegun frames or receivers as "firearms") function according to Congress's design.  Under any other approach, individuals could easily circumvent the requirements of the GCA and NFA by producing or purchasing almost-complete frames or receivers that could easily be altered to produce a functional frame or receiver.  This would thwart Congress's purpose in enacting the GCA and NFA to "ensure[] that weapons [are] distributed through regular channels and in a traceable manner," thus making "possible the prevention of sales to undesirable customers and the detection of the origin of particular firearms." *New York v. Burger*, 482 U.S. 691, 713 (1987).  As another court held in rejecting an argument virtually identical to that raised by the Plaintiff here, "adopting Plaintiffs' position would appear to contradict the plain language of the GCA, which clearly defined 'firearms' more broadly than a fully operational weapon." *Morehouse Enters. v. ATF*, No. 3:22-CV-116, 2022 WL 3597299 at *6 (D.N.D. Aug. 23, 2022), *appeal docketed*, No. 22-2812 (8th Cir.).

Similarly, ATF acted within its authority in determining in the letters that some of Plaintiff's partially complete frames are firearms under the GCA.  As explained in the letters, Plaintiff's frames have machining in the critical fire control cavities such that "a person with novice skills, using common tools," could complete them into an operable state "within minutes."  Open Letter at 3-6; Polymer80 Letter at 3-6.  If, as *VanDerStok* reasoned, "some degree of finality or functionality" is required for a nonfunctional frame to be considered a "frame or receiver," but "[t]he determination of degree likely rests with ATF," 2022 WL 4009048, at *5, then surely ATF acted within its discretion in determining that a product that could easily be completed within minutes qualified as a frame.

> b.   *ATF acted within statutory authority in defining firearm to include certain weapon parts kits*

ATF's definition of "firearm" as including weapon parts kits that can readily be completed into operational weapons fits well within statutory authority.  The GCA defines "firearm" as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a

14

projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." 18 U.S.C. § 921(a)(3).  The plain language of subsection (A) makes clear that "firearm" does not encompass only weapons that are complete or functional.  Specifically, the language "or is designed to or may readily be converted to [function as a weapon that expels a projectile]" makes clear that Congress intended the definition to include weapons in a variety of states of disassembly, disrepair, or functionality.  The definition's express inclusion of a "starter gun" – a gun designed for use with "blank ammunition," but which may be converted to expel live ammunition – is further evidence of Congress's decision to encompass more than only fully functional weapons within the definition.  *See* S. Rep. No. 88-1340, at 14 (1964).

Consistent with the plain language of the statute, federal courts have long recognized that a disassembled or nonfunctional weapon can constitute a "firearm" for purposes of the GCA.[10]  When ATF issued the Rule, the amended definition of "firearm" included "a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." 87 Fed. Reg. 24,735.  This additional language in the Final Rule's amended definition does not alter the statutory language of § 921(a)(3)(A); rather, it clarifies that a specific subset of products on the market falls within the statutory language of "any weapon . . . which . . . is designed to or may readily be converted to expel a projectile by the action of an explosive."  *Id.* at 24,662 n.44.

*VanDerStok* expressed concern that the Rule attempted to grant ATF "general authority to regulate weapon parts," 2022 WL 4009048, at *6, but the Rule does *not* categorically provide that any collection of components sold together, or any product billed as a parts kit, constitutes a "firearm" under the GCA.  As another court explained, "[t]he language from the Final Rule—'completed,

---

[10]  *See, e.g.*, *United States v. Wick*, 697 F. App'x 507, 508 (9th Cir. 2017); *United States v. Stewart*, 451 F.3d 1071, 1073 n.2 (9th Cir. 2006); *United States v. Annis*, 446 F.3d 852, 857 (8th Cir. 2006); *United States v. Ryles*, 988 F.2d 13, 16 (5th Cir. 1993); *United States v. Theodoropoulous*, 866 F.2d 587, 595 n.3 (3d Cir. 1989).

assembled, restored, or otherwise converted,' as well as the weapon kits at issue—fit squarely within the GCA's 'firearm' definition because after delivery, the kits are easily converted from mere parts into a weapon that expels a projectile. . . . Accordingly, the ATF did not act inconsistently with the GCA in considering weapon kits as firearms under federal law." *Morehouse*, 2022 WL 3597299, at *5.

2.     *Plaintiff is unlikely to succeed on its claim that the Rule violates the First Amendment*

Plaintiff is unlikely to succeed in its claim that the Rule violates the First Amendment by providing that the ATF may consider instructions in determining whether a product is a firearm.  *See* TRO/PI Mem. 14-15.  First and foremost, Plaintiff's First Amendment claim fails at the threshold because the Rule does not restrict or burden speech at all.  Nothing in the Rule prohibits or restricts sellers from including any content in their instructions or marketing materials.  Nor does the Rule compel sellers to include any specific content in such materials.  The Rule does not impose any punishment on any seller based on the content in such materials.  At most, the Rule provides that the content of such materials "may [be] consider[ed]," along with a number of other factors, by ATF in deciding how to classify a component.  87 Fed. Reg. at 24,739.  Even in the event that ATF classifies a particular product as a "frame or receiver," and therefore a "firearm" under the GCA, a seller may continue to sell, distribute, or otherwise make available the instructions or marketing materials in question, and it can also continue to sell the component or components subject to the classification decision, consistent with the obligations and requirements of the GCA.

Furthermore, instructions or marketing materials sold, distributed, or made available with weapon components are unquestionably commercial speech.  And although "commercial speech is protected by the First Amendment, courts give it 'lesser protection . . . than to other constitutionally guaranteed expression.'"  *Am. Acad. of Implant Dentistry v. Parker*, 860 F.3d 300, 306 (5th Cir. 2017) (quoting *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561-62 (1980)).  Moreover, nothing in the Rule targets any speech on the basis of the content of the speech.  The

16

Supreme Court has emphasized its "rejection of the view that *any* examination of speech or expression inherently triggers heightened First Amendment concern." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1474 (2022). Here, nothing in the Rule requires or restricts any specific content of a seller's instructions, manuals, or marketing materials; it only provides that ATF may examine and consider such materials, along with a number of other factors, in determining whether a product should be classified as a "frame or receiver."

To the extent the Rule might be considered to have some minor incidental impact on speech, the Rule is clear that it is not motivated by, or targeting, any marketing materials or instructions sold or provided by sellers; rather, the Rule's purpose is expressly to update certain regulatory definitions to "capture the full meaning" of terms used in the GCA and to better effectuate the purposes of that statute. *See* 87 Fed. Reg. at 24,652. The Supreme Court has held that a generally applicable government regulation that is not targeted at expressive activity does not implicate the First Amendment. *See, e.g.*, *Arcaca v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986) (rejecting First Amendment challenge to forced closure of a business that engaged in illegal activities and also sold books and other First Amendment protected speech). Here, the Rule's amended definition of "frame or receiver" does not target any expressive conduct, but is instead a regulation of general application clarifying the definition of frame or receiver.

Even if the Rule restricted or burdened speech in some way (which it does not), because the speech at issue is commercial speech and any restriction or regulation is content-neutral, the appropriate standard would be intermediate scrutiny, not strict scrutiny. *Reagan Nat'l Advertising*, 972 F.3d 695, 702 (5th Cir. 2020) (citing *Central Hudson*, 447 U.S. at 561). Intermediate scrutiny is satisfied in this context if the regulation "directly advance[s] the state interest involved" and could not be "served as well by a more limited restriction on commercial speech." *Central Hudson*, 447 U.S. at 564. Here, the challenged portions of the Rule unquestionably serve an important governmental interest –

assisting law enforcement in the increasingly difficult tasks of preventing and solving crimes committed with firearms.  *See* 87 Fed. Reg. at 24,652.  Additionally, as set forth earlier in this Section, the Rule does not restrict speech at all, or at most, imposes a minimal burden on speech.

        3.      *Plaintiff is unlikely to succeed on its claim that the Rule violates the Second Amendment*

Plaintiff is unlikely to succeed in its argument that the Rule infringes on the right to keep and bear arms in violation of the Second Amendment.  *See* TRO/PI Mem. 16-18.  The Supreme Court has confirmed that nothing in its decisions interpreting the Second Amendment "cast[s] doubt" on "laws imposing conditions and qualifications on the commercial sale of arms." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008); *see also N.Y. State Rifle & Pistol Ass'n. v. Bruen*, 142 S. Ct. 2111, 2162 (2022) (Kavanaugh, J., joined by Roberts, C.J., concurring) (same); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion) (same).  As ATF explained, the statutory licensing, recordkeeping, and background check requirements implicated by the Rule are such commercial restrictions; they "do not prohibit individuals from assembling or otherwise making their own firearms."  87 Fed. Reg. at 24,676.  Nor do those requirements "burden the ability of non-prohibited people to buy, sell, or possess firearms."  *Id.*  Thus, as the Rule properly explains, nothing in the Rule or the underlying statute "prevents law-abiding citizens" from exercising the Second Amendment "right to bear arms in public for self-defense." *Bruen*, 142 S. Ct. at 2156.  The Rule therefore does not infringe the protected right, and there is no need for further analysis.  *See id.* at 2126 (holding that the threshold inquiry is whether "the Second Amendment's plain text covers an individual's conduct").[11]

As the text of the Second Amendment makes plain, only a restriction that "infringe[s]" the right implicates the Amendment.  U.S. Const. amend. II; *see also Bruen*, 142 S. Ct. at 2126.  As the

---

[11] Because, as ATF correctly explained, the Rule is consistent with the plain text of the Second Amendment, it is of no moment that ATF also engaged in alternative analysis showing that the Rule would satisfy means-end scrutiny, 87 Fed. Reg. at 24,676-77, which was consistent with the prevailing mode of Second Amendment analysis at the time but which was not part of the Second Amendment standard articulated by *Bruen*, 142 S. Ct. at 2126.

Supreme Court has repeatedly made clear, the "right" protected in the Second Amendment's text is the right of law-abiding, responsible citizens "to keep and bear arms for self-defense." *Bruen*, 142 S. Ct. at 2125. Because, like many other commercial regulations, the Rule does not prevent any qualified individual from making, buying, or possessing firearms, it does not infringe that right and it need not be justified by historical analogy. And the Rule's requirements related to privately made firearms are, like the other requirements, commercial restrictions: they attach only to federal firearms licensees (who are necessarily engaged in commerce), not to private persons, and they attach only when the licensee takes the firearm into its inventory. The Rule comports with the Second Amendment because it does not "infringe[]" "the right of the people to keep and bear arms." U.S. Const. amend. II.

    4.    *Plaintiff is unlikely to succeed on its claim that the Rule, Open Letter, and Polymer80 Letter effectuate a taking or are unconstitutionally vague*

Plaintiff is unlikely to succeed in its argument that the Rule, Open Letter, and Polymer80 Letter effectuate an unconstitutional regulatory taking of PMFs. TRO/PI Mem. 18-19. The Rule and letters do not require a holder of PMFs to surrender PMFs; they merely require an FFL who takes a PMF into inventory to mark it with a serial number. *See* Rule, 87 Fed. Reg. at 24,742. Plaintiff cannot show that the mere requirement to mark a product with a serial number is "so onerous that its effect is tantamount to a direct appropriation or ouster," *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005), the standard required for a regulatory taking. If Plaintiff's argument were correct, any legal requirement that a business mark a product with a serial number would constitute an unconstitutional taking, but Plaintiff cites no case invalidating a serialization requirement as a taking.

Plaintiff is also unlikely to succeed on its claim that the Rule and letters are unconstitutionally vague. Under the Fifth Amendment's Due Process Clause, a criminal or quasi-criminal law is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *accord Munn v. City of Ocean Springs*,

763 F.3d 437, 439 (5th Cir. 2014). Plaintiff first argues that the Rule is vague because it "does not plainly indicate when or how an unregulated item becomes a frame or receiver and thus a firearm." TRO/PI Mem. 20. But the Rule sets forth the governing standard, that a partially complete frame or receiver is a frame or receiver if it has "reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon," and "is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver." 87 Fed. Reg. at 24,739 (27 C.F.R. § 478.12(c)). The Rule further clarifies this standard by listing eight factors relevant to the "readily" analysis, *id.* at 24,735 (27 C.F.R. § 478.11) and includes five examples to illustrate applications of this standard, *id.* at 24,739 (27 C.F.R. § 478.12(c)). To the extent Plaintiff claims to be confused by the Rule, ATF clarified the Rule's application to Plaintiff's products in the Open Letter and Polymer80 Letter.

Plaintiff next argues that the "readily" standard is itself unconstitutionally vague. TRO/PI Mem. 20-21. But the phrase "may readily be . . . converted" derives from federal statutes, including the GCA, which was enacted in 1968. *See* 18 U.S.C. § 921(a)(3) (GCA); 26 U.S.C. § 5845 (employing similar language in various definitions in the NFA). Courts have decades of experience applying these statutes, and ATF drew from this case law in listing the relevant factors. *See* Notice of Proposed Rulemaking, 86 Fed. Reg. 27,720, 27,730 & n.58 (collecting cases). Furthermore, the vast majority of courts to consider the question have rejected the argument that provisions of the GCA and the NFA addressing products that may be "readily converted" or "readily restored" to function in a particular manner (or materially identical language in state laws) are unconstitutionally vague.[12]

---

[12] *See, e.g., N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 266 (2d Cir. 2015) (rejecting a void-for-vagueness challenge to the term "can be readily restored or converted" in New York and Connecticut statutes); *United States v. Kelly*, 276 F. App'x 261, 267 (4th Cir. 2007) (same, as to 26 U.S.C. § 5845(b), which includes the term "can be readily restored"); *United States v. Kent*, 175 F.3d 870, 874 (11th Cir. 1999) (same, as to 26 U.S.C. § 5861(d), as applied to an individual who possessed a short-barrel rifle that was disassembled at the time of his arrest but could be "readily restored to fire," *id.* § 5845(c)-(d)); *United States v. Drasen*, 845 F.2d 731, 737-38 (7th Cir. 1988) (same, as to the GCA's

Finally, Plaintiff argues that the Rule's definition of "complete weapon," 87 Fed. Reg. at 27,747 (27 C.F.R. § 479.11) is vague as applied to an individual who possesses a combination of AR-patterned rifle and AR-pattern pistol parts.  TRO/PI Mem. 21; Kelley Decl. ¶ 13.  But Plaintiff cannot raise a vagueness challenge based on its "theoretical[]" concern that "[a]n individual could therefore possess a 'complete weapon' that is regulated by the National Firearms Act and cannot be lawfully owned without a federal tax stamp."  Kelley Decl. ¶ 13; *see Hill v. Colorado*, 530 U.S. 703, 733 (2000) ("speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications"). Moreover, ATF explained that the term "complete weapon," as used in the Rule, addresses when frames or receivers "that are in the process of being manufactured as part of complete weapons" must be marked.  87 Fed. Reg. at 24,700-01.  Specifically, the marking requirement takes effect only after "the entire manufacturing process has ended" for both NFA and non-NFA firearms.  *Id.* at 24,742 (codified as amended at 27 C.F.R. §§ 478.92(a)(1)(vi); 479.102(a)(6)).  Thus, provided that an individual does not actually make a disassembled AR-pattern rifle and AR-pattern pistol into a short-barrel rifle, requiring marking and NFA registration, the Rule imposes no new requirements on such an individual.

At bottom, Plaintiffs complain that the Rule's standards are imprecise, but the Due Process Clause does not require "perfect clarity and precise guidance."  *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).  Moreover, the Rule provides for an administrative process through which regulated entities may obtain classifications as to whether their particular products fall within the Rule's scope.

---

"statutory framework . . . as applied to parts kits"; *United States v. 16,179 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns*, 443 F.2d 463, 464 (2d Cir. 1971); *United States v. Quiroz*, 449 F.2d 583, 585 (9th Cir. 1971); *United States v. Wick*, No. CR 15-30-M-DLC, 2016 WL 10612608, at *3-4 (D. Mont. Mar. 11, 2016); *United States v. M-K Specialties Model M-14 Machinegun*, 424 F. Supp. 2d 862, 872 (N.D. W. Va. 2006); *United States v. Catanzaro*, 368 F. Supp. 450, 454 (D. Conn. 1973); *United States v. Whalen*, 337 F. Supp. 1012, 1018-19 (S.D.N.Y. 1972).  *But see Peoples Rts. Org., Inc. v. City of Columbus*, 152 F.3d 522, 538 (6th Cir. 1998) (holding that term "may be readily assembled," as used in a local firearms ordinance, did "not provide sufficient information to enable a person of average intelligence to determine whether a particular combination of parts [was] within the ordinance's coverage").

The Supreme Court and Fifth Circuit have held that "licensing . . . requirements," such as the Rule, "are afforded considerable deference in the vagueness analysis," in part "because the regulated party may 'have the ability to clarify the meaning of the regulation[s] . . . by resort to an administrative process.'" *United States v. Clinical Leasing Serv., Inc.*, 925 F.2d 120, 122 (5th Cir. 1991) (quoting *Vill. of Hoffman Ests. v. The Flipside*, 455 U.S. 489, 498 (1982)).   The Rule provides precisely such an opportunity, by inviting requests for voluntary classifications as to whether a particular item, such as a partially complete frame or receiver, is a "firearm" within the meaning of the GCA and its regulations.  *See* 87 Fed. Reg. at 24,743.

## II.   Plaintiff Fails to Establish Imminent Irreparable Harm

### A.   Plaintiff's Delay in Seeking Emergency Relief Weighs Against a Finding that They Will Suffer Irreparable Harm Absent Such Relief

Plaintiff's delay in seeking preliminary relief until eleven months after the Rule was announced weighs against its assertion that it would suffer irreparable harm without such relief.   "[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." *Anyadike v. Vernon Coll.*, No. 7:15-cv-00157-O, 2015 WL 12964684, at *3 (N.D. Tex. Nov. 20, 2015).   This Court has recognized that "[a]bsent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *VanDerStok*, 2022 WL 4009048, at *9 (quoting *Anyadike*, 2015 WL 12964684, at *4).

ATF announced the Final Rule on April 11, 2022, and published it in the Federal Register on April 26, 2022, with an effective date of August 24, 2022.  But Plaintiff did not move for a preliminary injunction until March 7, 2023, nearly eleven months after the Rule was announced.   "[C]ourts generally consider anywhere from a three-month delay to a six-month delay enough to militate against issuing injunctive relief." *Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 3:17-cv-3200-N, 2019 WL 7882552, at *2 (N.D. Tex. Sept. 18, 2019) (collecting cases).

22

To the extent that Plaintiff argues that it delayed seeking relief because ATF did not issue the Open Letter and Polymer80 Letter until December 2022, it should have come as no surprise that Plaintiff's frames, which can be completed "by a person with novice skill, using common tools, such as a Dremel-type rotary tool, within minutes," Open Letter at 6, qualify under the Rule as partially complete frames that "may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver," 87 Fed. Reg. at 24,739 (27 C.F.R. § 478.11(c)).

### B. Plaintiff Fails to Substantiate a Cognizable Imminent Threat of Irreparable Injury

Plaintiff fails to show that the Rule and letters have caused it irreparable harm.  Plaintiff claims irreparable harm based on its assertion that its business is imperiled because it has stopped selling products that are classified as firearms under the Rule and the letters.  TRO/PI Mem. 22.  But contrary to Plaintiff's assertion, the Rule and letters did not "force[] [Plaintiff] to discontinue sales" of any product.  *Id.*  Plaintiff could have continued selling those products, so long as it complied with the GCA's requirements for dealing in firearms, such as marking firearms with a serial number and running federal background checks on purchasers.  As another federal court in this state persuasively reasoned in denying a preliminary injunction based on similar asserted harm, a seller of products regulated as firearms under the Rule "does have a choice—[it] can get a license."  *Div. 80*, 2022 WL 3648454, at *3.  And Plaintiff does not even need to *get* a federal firearms license because it already has one,[13] and it alleges that its business already includes selling "firearms," Compl. ¶ 2, which requires complying with the GCA.  Defendants acknowledge that *VanDerStok* rejected the argument that harm that can be avoided by complying with the Rule is not irreparable harm, *see, e.g.*, *VanDerStok*, 2022 WL 4009048, at *8, but Defendants respectfully submit that the analysis in *Division 80* is more persuasive

---

[13] *See* https://www.atf.gov/firearms/docs/undefined/0123-ffl-list-nevadaxlsx/download (row 417).

and more consistent with authority holding that "self-inflicted" harms "do not count" as irreparable harm. *Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021).

Plaintiff also argues that it faces irreparable harm in the form of unrecoverable compliance costs. TRO/PI Mem. 22. But as *Division 80* explained in rejecting a similar argument, "[i]t remains that in this circuit, a 'preliminary injunction is not appropriate where the potential harm to the movant is strictly financial, unless the potential economic loss is so great as to threaten the existence of the movant's business.'" 2022 WL 3648454, at *4 (quoting *Andritz Sundwig GmbH v. United States*, No. CV 4:18-2061, 2018 WL 3218006, at *10 (S.D. Tex. July 2, 2018) (citing *Atwood Turnkey Drilling, Inc. v. Petroleo Brasiliero, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989))). The *VanDerStok* court concluded that any nonrecoverable compliance costs above a "de minimis" amount were sufficient for irreparable harm. 2022 WL 4009048, at *8-9. But the cases *VanDerStok* cited found irreparable harm based on compliance costs of great magnitude.[14] Those cases did not purport to overrule the Fifth Circuit's holding that financial harm is not irreparable unless "the potential economic loss is so great as to threaten the existence of the movant's business." *Atwood*, 875 F.2d at 1179. Plaintiff's assertion that it faces "nonrecoverable compliance costs," Kelley Decl. ¶ 14, without any substantiation of the magnitude of such costs, is insufficient to show irreparable harm.

## III. The Balance of Equities and Public Interest Make Injunctive Relief Inappropriate

Plaintiff fails to show that the balance of equities and public interest weigh in favor of injunctive relief. The Rule advances the government's public safety interest in preventing individuals from obtaining and using in criminal activity unserialized firearms that cannot be traced by law enforcement. *See Div. 80*, 2022 WL 3648454, at *6 (agreeing with the federal government's contention that "the implementation of the Final Rule will decrease the number of untraceable firearms in

---

[14] *See Texas v. U.S. EPA*, 829 F.3d 405, 433-34 (5th Cir. 2016) (compliance would impose "tremendous costs" of "$2 billion"); *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021) (government did not dispute that regulation would force plaintiff to halt its business).

circulation, thus facilitating law enforcement's efforts to keep guns out of the hands of criminals"); *Morehouse*, 2022 WL 3597299, at *12 (injunction would "harm . . . ATF's interest in law enforcement and public safety").  That public interest is especially acute here given that and Plaintiff, who claims to be the "industry leader," Compl. ¶ 2, wishes to sell pistol frames that that can be completed to a functional state "within minutes" by someone of "novice skill, using common tools," Open Letter 6, without serialization or background checks.  Plaintiff's interest in selling these products without complying with the regulatory requirements that apply to all firearms sales by licensed firearms dealers do not outweigh the public interest. *See Div. 80*, 2022 WL 3648454, at *6; *Morehouse*, 2022 WL 3597299, at *12.  *But see VanDerStok*, 2022 WL 4009048, at *10 (holding that balance of equities weighed in favor of injunctive relief).  In addition, equitable considerations do not support rewarding Plaintiff's apparent forum-shopping and judge-shopping, *see* ECF No. 13, at 14, when Plaintiff could have and should have sought relief in a proper venue.

At a minimum, if the Court awards injunctive relief, it should exclude from such relief any of Plaintiff's customers who are prohibited from possessing firearms by 18 U.S.C. § 922(g).  The *VanDerStok* court included a similar limitation in its injunction orders based on "Defendants' policy concerns regarding the proliferation of unserialized firearms, otherwise known as ghost guns," in order to "prohibit high-risk individuals from gaining access to ghost guns."  *VanDerStok*, ECF No. 91, at 4. Plaintiff makes no showing that such a limitation would be inappropriate here.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

DATED: March 15, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

LESLEY FARBY
Assistant Director, Federal Programs Branch

*/s/ Jeremy S.B. Newman*
DANIEL RIESS
MARTIN M. TOMLINSON
TAISA GOODNATURE
JEREMY S.B. NEWMAN
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 532-3114
Email:  jeremy.s.newman@usdoj.gov
*Attorneys for Defendants*

26

## CERTIFICATE OF SERVICE

On March 15, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jeremy S.B. Newman*