# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

POLYMER80, INC.,

     Plaintiff,

  v.

MERRICK GARLAND, in his official capacity as Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,

     Defendants.

Case No. 4:23-cv-00029-O

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY PRELIMINARY INJUNCTION

Pursuant to this Court's order of November 4, 2023, ECF No. 45, Defendants hereby submit this reply memorandum in support of their Motion to Stay Preliminary Injunction, ECF No. 44 ("Motion" or "Mot."). The opposition brief filed by Plaintiff Polymer80, Inc. ("Polymer80") also included a motion for sanctions. *See* Polymer80's Opp'n to Defs' Mot. to Stay Prelim. Inj. & Mot. for Sanctions, ECF No. 46 ("Opposition" or "Opp'n"). Defendants contest the notion that the Motion is sanctionable or inappropriate in any way. Defendants will respond to Polymer80's sanctions motion separately in due course.

The Supreme Court's orders staying this Court's vacatur of the Rule[1] in *VanDerStok v. Garland*, No. 4:22-cv-00691-O (N.D. Tex.), and vacating party-specific injunctions in favor of two *VanDerStok* plaintiffs demonstrate the Supreme Court's authoritative determination that ATF should be permitted to enforce the Rule against all parties pending appeal (including Polymer80) and thus establish that Defendants have satisfied the standard for a stay pending appeal. Polymer80 barely attempts to argue otherwise, beyond asserting that this Court should disregard the Supreme Court's rulings in favor of lower court rulings that have been stayed or set aside by the Supreme Court.

Polymer80 focuses its argument almost entirely on the contention that a May 2023 email exchange between Polymer80's counsel and government counsel gave rise to some sort of an agreement by Defendants of unlimited duration not to seek a stay. But the text of the email exchange and its surrounding context, as well as the relevant legal principles, refute this argument. In the email at issue, government counsel was seeking Plaintiff's consent for an abeyance of appellate proceedings and stated, "we can represent that the government won't request a stay of the injunction," ECF No. 47, at App'x 002. The government, however, did not specify a duration of that representation, meaning the duration must be interpreted in light of the surrounding context. The relevant context

---

[1] Final Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022).

here establishes that the government's statement applied only as long as the interlocutory appeal in this matter remained in abeyance, and the abeyance has now expired.  Furthermore, before the email exchange, Polymer80 told this Court that if allowed to participate in *VanDerStok*, it could voluntarily dismiss this action to forestall a claim splitting objection, but Polymer80 has continued to engage in claim splitting in order to frustrate the Supreme Court's determination about the status quo that should prevail during appellate proceedings.  This context shows that it would be unreasonable to read government counsel's email as precluding Defendants from seeking a stay at this time.

## ARGUMENT

I.     **Polymer80 Fails To Rebut Defendants' Showing That All Of The Equitable Factors Weigh In Favor Of A Stay**

Defendants showed in their Motion that the Supreme Court's rulings necessarily demonstrate that Defendants should be permitted to implement the Rule fully during appellate review.  Mot. 3-5. Defendants further showed that the equitable factors all weigh in favor of a stay.  *Id.* at 6-9.  Polymer80 responds to these arguments in only a perfunctory manner, and Polymer80's argument boils down to a suggestion that this Court should disregard the Supreme Court's conclusions.  But the Supreme Court's rulings are controlling.

On the likelihood of success on the merits, Polymer80 points to the rulings of this Court and the Fifth Circuit in *VanDerStok*, while criticizing Defendants for "put[ting] far more weight on the Supreme Court's orders" than on the orders of lower courts subordinate to the Supreme Court.  Opp'n 7-8.  To state the obvious, Defendants put weight on the Supreme Court's orders because the Supreme Court sits at the pinnacle of the federal judiciary, above all other federal courts.  *See* U.S. Const., Art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.").  And Polymer80 is wrong that the Supreme Court's "orders are silent on the merits" of Polymer80's challenges to the Rule.  Opp'n 8.  In staying the vacatur of the Rule over Polymer80's objection, the Supreme Court

2

necessarily found "a reasonable probability" that the Supreme Court "would eventually grant review" and "a fair prospect that the Court would reverse," *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring), which is not materially different from the standard required by the Fifth Circuit for a stay pending appeal. *See* Mot. 6 & n.9.[2]  In addition to looking to the Supreme Court's rulings, this Court can look to its own recent ruling in *VanDerStok*, where it denied a plaintiff's motion for an injunction pending appeal on the basis that this Court's earlier order granting injunctive relief to other *VanDerStok* plaintiffs "has been subsequently vacated without opinion in the October 16, 2023 Order of the Supreme Court of the United States." *VanDerStok*, ECF No. 268, at 1-2 (citation omitted).  That Order correctly recognized the controlling nature of the Supreme Court's rulings.

The Supreme Court's rulings are equally controlling as to irreparable harm and the balance of equities.  Polymer80 states in a single sentence that it "will face irreparable harm in deprivations of its constitutional and procedural rights and nonrecoverable compliance costs."  Opp'n 8.  But Polymer80 does not respond to Defendants' showing that *Defendants* are suffering irreparable harm from injunctive relief allowing a manufacturer to freely distribute partially complete frames and receivers and weapon parts kits from which operable ghost guns can easily be assembled, a finding that the Supreme Court necessarily made in vacating the injunctions in favor of other *VanDerStok* plaintiffs.  *See* Mot. 6-8; *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring).  Polymer80 therefore concedes Defendants' irreparable harm.  On the balance of equities, Polymer80 does not respond to Defendants' showing that the Supreme Court necessarily determined that the equities weighed in favor

---

[2] Yesterday, the Fifth Circuit in *VanDerStok* affirmed this Court's holding that two portions of the Rule were unlawful and remanded to this Court to reconsider the remedy. *VanDerStok v. Garland*, --- F.4th ---, 2023 WL 7403413 (5th Cir. Nov. 9, 2023).  But the Supreme Court's stay of the judgment in *VanDerStok* extended not just through Fifth Circuit review but through "disposition of a petition for a writ of certiorari, if such a writ is timely sought." *Garland v. VanDerStok*, No. 23A82 (U.S. Aug. 8, 2023).  That order necessarily reflects the Supreme Court's determination that Defendants had shown the requisite likelihood of success in the Supreme Court, even in the potential eventuality (now realized) that the Fifth Circuit affirmed this Court's holding that the Rule was unlawful.

of vacating party-specific injunctions.  *See* Mot. 8; *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring). If anything, the balance of equities weighs more strongly in favor of staying this injunction than it did in favor of vacating the BlackHawk Manufacturing and Defense Distributed injunctions.  Polymer80 does not dispute Defendants' showing that Polymer80 is most likely the largest manufacturer of the partially complete frames, receivers, and weapon parts kits that are used to make fully functional ghost guns and is by far the largest identifiable source of ghost guns recovered from crime scenes.  Mot. 7.[3]

## II.   Counsel's May 2023 Email Exchange Does Not Preclude The Relief Sought

Lacking any plausible argument that a stay is unwarranted, Polymer80 principally relies on the argument that Defendants "bargained away" their right to file this Motion through a May 2023 email exchange involving the parties' counsel, which Polymer80 contends was a binding agreement of unlimited duration.  Opp'n 4.  Polymer80 also argues that "[t]he Court should . . . equitably estop Defendants from seeking a stay."  *Id.* at 7.  Neither theory has merit.  To the extent that counsel's email exchange gave rise to any agreement or binding obligation, the email exchange itself, the context surrounding it, and background principles of contract law and equitable estoppel demonstrate that any agreement not to seek a stay was limited in duration and did not extend beyond the time that the interlocutory appeal in this matter was held in abeyance.  That abeyance has now ended, and there is no basis to conclude that the government cannot now seek a stay in light of the present circumstances.

Polymer80's primary legal error is to argue that because the email of government counsel does not set a specific duration for the representation that the government would not seek a stay, *see* ECF No. 47, App'x 002 ("we can represent that the government won't request a stay of the injunction"), that email must be construed as an unambiguous agreement not to seek a stay at any time, with no

---

[3] Polymer80 argues that "the public interest is *not* served by the perpetuation of unlawful agency action," Opp'n 8 (citation and quotations omitted), but this argument ignores that the Supreme Court has already determined that it is sufficiently likely that Defendants will show that the Rule is lawful to justify staying this Court's vacatur of the Rule and vacating party-specific injunctions.

temporal limit whatsoever, *see* Opp'n 6 (arguing that the supposed agreement "is not qualified in any way. No elements of timing . . . govern the extent to which Defendants are precluded from seeking a stay."). Polymer80 relies on a theory that the email was a binding agreement, but the cases Polymer80 cites involved formal plea agreements, stipulations, pleadings, and other formal contracts—none of which resemble the email at issue here.[4] Even if it were appropriate to evaluate an email from counsel in litigation under the same framework, Polymer80's argument would fail under ordinary contract principles. The Supreme Court has endorsed the conclusion of the Corbin treatise that "contracts that are silent as to their duration will ordinarily be treated not as 'operative in perpetuity' but as 'operative for a reasonable time.'" *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 441 (2015) (quoting 3 A. Corbin, Corbin on Contracts § 553, p. 216 (1960)).[5] The Supreme Court of Texas has likewise concluded that "in contracts of the general type," meaning contracts of unspecified duration, "a term of reasonable duration may be implied," because without implying such a limit, the agreement would be "void for lack of an essential provision." *Hall v. Hall*, 308 S.W.2d 12, 15 (Tex. 1957).

Under this case law, even if contract law principles were applicable, government counsel's email without specific indication of duration cannot be construed as reflecting an unambiguous agreement of unlimited duration not to seek a stay. Rather, the representation is operative for a

---

[4] *See, e.g., Laird v. Air Carrier Engine Serv., Inc.*, 263 F.2d 948, 950 (5th Cir. 1959) (formal factual stipulation on the record at a court hearing); *United States v. Price*, 95 F.3d 364, 366-67 (5th Cir. 1996) (formal plea agreement); *Gonzalez v. Allstate Vehicle & Prop. Ins. Co.*, No. 5:19-CV-65, 2019 WL 7900263, at *2 (S.D. Tex. Aug. 16, 2019) (formal stipulation contained in the pleading initiating a case limiting damages sought); *Lachney v. State Farm Fire & Cas. Co.*, No. 14-476, 2014 WL 1514172, at *1 (E.D. La. Apr. 16, 2014) (same); *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 102 (2013) (term in written ERISA plan setting limitations period for claims).

[5] The more recent edition of the Corbin treatise similarly states that when a contract "does not specify how long performance should continue," courts examine whether "the surrounding circumstances . . . indicate the parties' intentions," and courts "may hold that the contract will remain in effect for a reasonable time, or that the contract is terminable at will by either or both parties, or terminable on the occurrence of a specific event, or terminable by one of the parties only on condition of some act or forbearance by that party." 5 Margaret N. Kniffin, Corbin on Contracts § 24.29, pp. 318-19 (rev. ed. 1998).

reasonable time, creating ambiguity about the reasonable duration of the promise that must be assessed in light of the surrounding circumstances. *See Gallagher Headquarters Ranch Dev., Ltd. v. City of San Antonio*, 303 S.W.3d 700, 702 (Tex. 2010) ("[W]hen a contract is ambiguous, extrinsic evidence may be used to determine the intent of the parties."); *see also Great Lakes Ins., S.E. v. Gray Grp. Invs., L.L.C.*, 76 F.4th 341, 349 (5th Cir. 2023) (citing "general rule that a court may examine extrinsic evidence to ascertain the meaning of an ambiguous contract").[6]

More generally, context is always relevant to interpreting an agreement. Courts "may consider the facts and circumstances surrounding a contract, including 'the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give context to the parties' transaction.'" *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015) (quoting *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014)). "A contract is interpreted in light of how a reasonable person would have understood the language, circumstances of negotiation, and the purposes for entering into the agreement—all at the time the parties executed the contract." *Sears Authorized Hometown Stores, LLC v. Y&O WF, LLC*, No. 7:18-CV-00083-O-BP, 2019 WL 5883693, at *4 (N.D. Tex. Nov. 11, 2019) (O'Connor, J.) (citation omitted).

Circumstances surrounding the email exchange at issue show that any reasonable duration had passed before Defendants filed their motion. Here, the "circumstances of negotiation," *id.*, which this Court has recognized are relevant to contract interpretation, include that government counsel asked Polymer80's counsel whether Polymer80 would consent to hold the interlocutory appeal of the preliminary injunction in this matter in abeyance pending the Fifth Circuit's resolution of appeals of

---

[6] Polymer80 is incorrect to argue that the email exchange reflects an agreement that is unambiguous, but even if Polymer80 were correct that the purported agreement appeared unambiguous on its face, it would still be necessary to examine the surrounding circumstances to determine whether a latent ambiguity existed. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) ("A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter.").

preliminary injunctions in *VanDerStok*. *See* ECF No. 47, at App'x 003. Polymer80's counsel responded by asking if the government would request a stay of the injunction, and in that context, government counsel replied, "we can represent that the government won't request a stay of the injunction." *Id.* at App'x 002. That context establishes the "reasonable time" that counsel's representation of unspecified duration should remain "operable." *M & G Polymers*, 574 U.S. at 441. Because the representation was made in the context of securing consent to a motion to hold the *Polymer80* interlocutory appeal in abeyance, a reasonable time is no longer than the duration of that abeyance. But the appeal was removed from abeyance on September 12, 2023, *see* Order, No. 23-10527 (5th Cir. Sept. 12, 2023), long before Defendants filed this motion. The underlying premise of putting the appeal in abeyance was that developments in *VanDerStok* would likely inform the appropriate resolution of the government's challenge to the preliminary injunction in this case. Given that premise, if developments in *VanDerStok* made clear that Polymer80 was not entitled to continued protection from the preliminary injunction and the abeyance was lifted, the reasonable understanding of any agreement was that the government could seek to expeditiously remove that protection, including through a motion to stay. And that is exactly what has now occurred.[7]

Another relevant circumstance is that in order to forestall Defendants' objection that Polymer80 was engaged in claim splitting, less than two weeks before counsel's email exchange, Polymer80 represented that if allowed to intervene in *VanDerStok*, it could voluntarily dismiss this lawsuit. *VanDerStok*, ECF No. 214, at 2. In light of that representation, it would be unreasonable to conclude that government counsel's representation extends to a time when Polymer80's status as a party in *VanDerStok* is secure, but Polymer80 has continued to engage in claim splitting.

---

[7] Accordingly, Polymer80 disregards half the equation in stating that "Defendants have already reaped the benefits of the Agreement." Opp'n 6. Polymer80 has also fully reaped the benefits of the representation because the government did not move to stay the preliminary injunction while the appeal was in abeyance.

Defendants opposed Polymer80's motion to intervene in *VanDerStok*, arguing that intervention should be denied because it would result in improper claim splitting. *VanDerStok*, ECF No. 206, at 3-4. In its reply filed on May 11, 2023 (thirteen days before the email exchange between counsel), Polymer80 did not dispute that pursuing *VanDerStok* and this action would constitute claim splitting, but it assured the Court that it could deal with any claim splitting issue by declining to participate in one of the two cases, stating: "Polymer80 could elect to pursue [*Polymer80*] and withdraw from [*VanDerStok*], or—if allowed to participate in [*VanDerStok*] as an intervening party—voluntarily dismiss *Polymer80*, also mooting any claim-splitting objection." *VanDerStok*, ECF No. 214, at 2. Based on this representation, Defendants reasonably and justifiably expected that Polymer80 would not continue to pursue this action if it secured participation in *VanDerStok*—as it in fact did.

However, Polymer80 has continued to engage in claim splitting. On June 30, 2023, this Court in *VanDerStok* simultaneously granted Polymer80's motion to intervene and granted summary judgment in Polymer80's favor, vacating the Rule. *See VanDerStok*, ECF No. 227. In this action, the Court then entered an order noting that Polymer80 "indicated that if it were permitted to intervene in the related case it would voluntary [sic] dismiss the current action," and directing Polymer 80 "to file appropriate dismissal papers" or "file a notice informing the Court why dismissal at this juncture is inappropriate." Order, ECF No. 36. Polymer80 responded by opposing dismissal solely on the basis that "Defendants can challenge Polymer80's *Vanderstok* intervention on appeal." Polymer80, Inc.'s Notice in Response to Court Order. ECF No. 37, at 2. However, the basis for that objection to dismissal was removed on August 9, 2023, when Defendants elected not to challenge Polymer80's intervention in *VanDerStok* on appeal. *See* Brief for Appellants, *VanDerStok v. Garland*, No. 23-10718 (5th Cir.) (Aug. 9, 2023).[8] Yet Polymer80 still has not dismissed this action and has opposed dismissal.

---

[8] Shortly after deciding not to appeal Polymer80's intervention in *VanDerStok*, Defendants filed a motion to dismiss this action on the basis of Polymer80's claim splitting, ECF No. 39, reflecting Defendants' consistent position that the rule against claim splitting precludes Polymer80 from

When Defendants moved to dismiss this action on the basis of claim splitting, Polymer80 did not dispute that it was engaged in claim splitting, but instead asked the Court to "exercise its discretion" to excuse that claim splitting.  ECF No. 40, at 8.

Polymer80's May 11 representation to this Court in *VanDerStok* is a crucial aspect of the "circumstances of negotiation," *Sears*, 2019 WL 5883693, at *4, that inform interpretation of the purported agreement.  Based on this representation, Defendants did not reasonably expect that Polymer80 would continue to maintain this action even after Polymer80 successfully intervened in *VanDerStok* and Defendants did not appeal that intervention.  Furthermore, in determining a "reasonable time" for the "operative[ness]" of government counsel's representation, *M & G Polymers*, 574 U.S. at 441, this Court should not ignore that Polymer80 is seeking a benefit that no other manufacturer of partially complete frames or receivers or weapon parts kits enjoys (*i.e.*, ongoing protection from the Rule), despite the Supreme Court's clear determination that ATF should be able to implement the Rule during the appellate process—and that Polymer80 is seeking to accomplish that result by departing from its prior representations and continuing to engage in claim splitting.[9]

As noted above, Polymer80 also argues in half a sentence that "[t]he Court should . . . equitably estop Defendants from seeking a stay."  Opp'n 7.  Because Polymer80 presents no developed argument in support of this request, it is waived.  In any event, the case cited by Polymer80 shows that equitable estoppel is inappropriate.  Courts are "exceedingly reluctant to grant equitable estoppel against the government," imposing a "very high" burden that requires satisfying five requirements,

---

pursuing both actions.  That motion was fully briefed as of September 22 and remains pending.  If the Court were to grant that motion, it would moot this stay motion.

[9] Although Defendants will respond fully to Polymer80's sanctions motion in due course, it is worth noting that to the extent Polymer80 points to its expenses incurred in litigating this action after securing intervention in *VanDerStok*, those expenses result solely from Polymer80's decision to continue to engage in claim splitting.  Polymer80 objects to alleged "vexatious" litigation by Defendants, Opp'n 8, but the claim splitting rule is intended to "shield parties from vexatious and duplicative litigation."  *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017).

which Polymer80 makes no attempt to do. *Robertson-Dewar v. Holder*, 646 F.3d 226, 229-30 (5th Cir. 2011). Here, the same context that is relevant to construing the scope of any agreement by counsel also informs the applicability of equitable estoppel. Polymer80 has not shown, as required, "affirmative misconduct by the government," meaning "an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Id.* at 229 (citation omitted). For the reasons explained above, filing this Motion was fully consistent with government counsel's representations, and in any event Defendants' good faith disagreement with Polymer80 as to the meaning of those representations does not constitute misconduct. Particularly in light of Polymer80's indication to this Court (before counsel's representations) that Polymer80 would dismiss this action if permitted to intervene in *VanDerStok*, principles of equity do not support estopping the government from seeking to stay the preliminary injunction now that Polymer80 has opposed dismissal.

In sum, it would violate cardinal principles of contract law and principles of equitable estoppel to interpret government counsel's representation as creating a binding obligation of unlimited duration. The duration of the obligation is determined by a reasonableness test, in light of the surrounding circumstances. Given the circumstances described above, it is unreasonable to construe the email exchange as creating an obligation that lasted through November 3, 2023, when Defendants filed this motion. And there is certainly no basis to conclude that Defendants engaged in the kind of litigation misconduct that would give rise to estoppel.

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' Motion, Defendants respectfully request that the Court grant the Motion and enter an order staying the Court's order granting preliminary injunctive relief, ECF No. 27, pending the resolution of the interlocutory appeal in this matter, and pending the disposition of the appeal in *VanDerStok*, No. 23-10718, and disposition of a petition for a writ of certiorari, if such a writ is timely sought.

DATED: November 10, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

LESLEY FARBY
Assistant Director, Federal Programs Branch

*/s/ Jeremy S.B. Newman*
DANIEL RIESS
TAISA GOODNATURE
JEREMY S.B. NEWMAN
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 532-3114
Email:  jeremy.s.newman@usdoj.gov

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

On November 10, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jeremy S.B. Newman*